# Exhibit A

**| Respond to Selected Documents**

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries

**03/06/2026**

**Order**

MOTION TO FILE UNDER SEAL GRANTED. SO ORDERED: JUDGE BRUCE F. HILTON

**02/27/2026**

**Summ Issd- Circ Pers Serv O/S**

Document ID: 26-SMOS-495, for US HEALTH SYSTEMS, LLC Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**02/19/2026**

**Filing Info Sheet eFiling**

**Filed By:** AARON JAMES CHICKOS

**Other Proposed Document Filed**

Proposed Order for Motion to File Under Seal.

**Filed By:** AARON JAMES CHICKOS

**On Behalf Of:** HEALTH NET OF ARIZONA INC

**Motion Filed**

Motion to File Under Seal Unredacted Petition and Exhibits 1-4; Proposed Order.

**Filed By:** AARON JAMES CHICKOS

**On Behalf Of:** HEALTH NET OF ARIZONA INC

**Motion Special Process Server**

Request for Appointment of Process Server.

**Filed By:** AARON JAMES CHICKOS

**On Behalf Of:** HEALTH NET OF ARIZONA INC

**Pet Filed in Circuit Ct**

Petition.

**Filed By:** AARON JAMES CHICKOS

**On Behalf Of:** HEALTH NET OF ARIZONA INC

**Judge Assigned**

DIV 16

26SL-CC01932
Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| Health Net of Arizona, Inc.<br>d/b/a Arizona Complete Health,<br>Plaintiff, | ) | |
| v. | ) | Case No.<br><br>Division No. |
| US Health Systems, LLC, d/b/a USHS<br>Defendant. | ) | **DEMAND FOR JURY TRIAL** |
| **Return for Service**:<br>US Health Systems, LLC, d/b/a USHS<br>c/o RA - Cogency Global, Inc.<br>300 West Clarenton, Suite 240<br>Phoenix, Arizona 85013 | ) | |

## PETITION

Plaintiff Health Net of Arizona, Inc. d/b/a Arizona Complete Health ("Health Net") hereby submits its Petition against Defendant US Health Systems, LLC d/b/a USHS ("USHS") and states as follows:

## INTRODUCTION

1. Plaintiff Health Net is a managed care organization that offers Medicare, Medicaid, Affordable Care Act and other health plans in the State of Arizona. Health Net uses a value-based model that rewards healthcare providers for high-quality, cost-efficient, and equitable care, focusing on member outcomes, preventative care, and integrated whole-person health. Defendant USHS is an organization that maintains a network of health care providers, including physicians, physician groups, hospitals, and specialists that are interested in improving care and reducing costs. Under the Master Services Agreement

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

between Health Net and USHS, effective January 1, 2020 ("MSA"), USHS agreed to engage its network of providers in a value-based incentive program offered by Health Net. The design of the MSA rewarded USHS for lowering the cost of care and improving patient medical outcomes. Specifically, USHS was compensated in the form of upfront, predetermined capitation payments.[1] However, USHS became eligible for additional compensation in the form of a "bonus" if its performance exceeded the agreed-to benchmarks. Conversely, if USHS failed to effectively manage the cost and quality of care, USHS was obligated to pay back a portion of the upfront payments. Unfortunately, USHS underperformed. [redacted].

2. USHS assumed significant downside risk through its deficit obligations under the MSA. For that reason, Health Net insisted that USHS provide security ensuring that Health Net could recover any deficit. That security took the form of a letter of credit that USHS procured for USHS's benefit. However, after Health Net attempted to draw on that letter of credit in relation to the 2022 deficit amount described above, the Florida LLC that supposedly issued the credit not only failed to honor the request but failed to respond altogether. The LLC ***dissolved itself entirely*** only days later. Upon closer examination, the letter confirming the credit, while on letterhead of the Florida LLC, was signed ***not*** by the

[1] A "capitation" payment is a way of paying health care providers or organizations in which they receive a predictable, upfront, set amount of money to cover the predicted cost of all or some of the health care services for a specific patient over a certain period of time.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

LLC—***but by USHS's managing member***. Further research has revealed other classic indicators of fraud, including that the LLC provided an invalid address and phone number and had an inactive website. Health Net raised these concerns with USHS—including the question of why the confirmation was signed by USHS's managing member. Rather than offer any explanation or investigate the issue, USHS summarily dismissed Health Net's concerns as unfounded. To this day, USHS has failed to notify Health Net of the Florida LLC's voluntary dissolution.

3. USHS's breaches, misrepresentations, and omissions—including its procurement and reliance on invalid and apparently inauthentic letter of credit—caused Health Net to continue performance under the Agreement, including by making continued capitation payments, deprived Health Net of its bargained-for security contained in the letter of credit obligation, and caused Health Net to incur millions of dollars in damages.

## PARTIES

4. Health Net is a managed care organization offering health insurance plans in the State of Arizona for individuals, families, and employers, including through Medicare Advantage, employer-based coverage, Marketplace, and Medicaid.

5. Health Net is an Arizona Corporation with its principal place of business located at 3800 N. Central Avenue Ste 460, Phoenix, Arizona 85012.

6. USHS is a Management Services Organization that contracts with health care providers including physicians, physician groups, hospitals, and specialists that desire to improve care and reduce costs.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

7. USHS is a Nevada company with its principal place of business located at 300 W. Clarendon, Suite 240, Phoenix, Arizona 85013.

8. Upon information and belief, on or around July of 2020, USHS merged with two other entities to form Arkos Health, Inc. ("Arkos").

9. Upon information and belief, after the 2020 merger, USHS continued as a wholly owned subsidiary of Arkos. Arkos became the parent and managing member of USHS, and thereafter individuals associated with Arkos purported to act and did act on behalf of USHS, as the agent of USHS, including in their capacity as USHS's managing member, in its dealings with Health Net under the 2020 MSA. Unless expressly provided otherwise, reference in this Petition to "USHS" after the 2020 merger refers to USHS and individuals acting on behalf of USHS, including Arkos as USHS's managing member and agent.

## JURISDICTION AND VENUE

10. Jurisdiction and venue is proper in this Court pursuant to Section 14 of Master Services Agreement (the "MSA"), providing: "[redacted]" The MSA is attached as **Exhibit 1**.

11. Neither party is a Missouri resident. Additionally, Health Net's injury was first injured outside the State of Missouri. Accordingly, venue is proper in any county in Missouri, including in the County of St. Louis, Missouri.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

# FACTUAL BACKGROUND

## I. THE PARTIES' RELATIONSHIP

12. Founded in Tucson in 1981, Health Net is a managed care health insurance company in Arizona providing comprehensive, integrated health coverage including through Arizona's Medicaid program (Arizona Health Care Cost Containment System), Medicare, and the Health Insurance Marketplace (Ambetter from Arizona Complete Health).

13. Health Net is a subsidiary of Centene Corporation, a Fortune 500 company and leading healthcare company based in St. Louis County, Missouri.

14. Health Net uses a value-based model to reward providers for high-quality, cost-efficient, and equitable care, focusing on member outcomes, preventative care, and integrated whole-person health. In contrast to, for example, fee-for-service models in which providers are paid for each specific service they deliver, Health Net compensates providers primarily through capitated payments, consisting of pre-determined payment amounts that are calculated per patient per month and paid in advance.

15. USHS is a health management company that contracts with health care providers including physicians, physician groups, hospitals, and specialists that desire to improve care and reduce costs. USHS purports to improve operational and administrative efficiencies for the purpose of enabling providers to benefit from value-based care arrangements, such as the ones offered by Health Net. To improve the care provided to its members, Health Net contracts with companies like USHS—who promise to lower the cost of care and improve medical outcomes.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

16. Health Net compensated USHS through fixed, advance capitated payments. However, the advance payments were subject to a yearly Health Benefit Ratio ("HBR") analysis that potentially adjusted the advance payment amounts based in part on USHS's actual performance.

17. While the specifics of the reimbursement model changed over time, broadly, USHS was required to meet a target HBR measuring the percentage of providers' medical costs including administrative costs and profit, as compared with the premium dollars attributable to the members whom those providers serve. To the extent that USHS's actual HBR percentage was below the HBR target (signifying less costly health benefits), the more compensation USHS would earn. Conversely, USHS may be entitled to less compensation to the extent its cost ratio exceeded the target HBR.

18. In fact, USHS had sought a model which maximized its incentives to provide cost saving and high quality care to Health Net's members, including the ability to grow its revenue. However, that same model increased USHS's downside risk and, in particular, its financial exposure in the event it failed to meet its performance metrics, like the HBR target.

19. Early on in the relationship, USHS met or exceeded its performance metrics. Shortly thereafter, USHS began rapidly expanding its business to serve additional patient populations, to other jurisdictions, and also to additional product offerings under Medicare, Medicaid and the commercial marketplace. As USHS grew dramatically, its performance

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

in Arizona began to falter. By 2022, USHS was failing to meet its contractual benchmarks in Arizona.[2]

## II. THE 2020 MASTER SERVICES AGREEMENT

20. Health Net's contractual claims in this lawsuit arise out of and relate to the Master Services Agreement between Health Net and USHS, effective January 1, 2020, governing, among other things, the payment obligations between the parties as it relates to Medicare for the year of 2022. USHS agreed to engage its network of providers in Health Net's value-based incentive program and to render certain services in administering that program such as:

[redacted]

21. In exchange, Health Net agreed to pay USHS the amounts payable under the MSA.

### A. Compensation under the MSA

22. USHS's compensation for these services was governed by Exhibit B to the MSA. Under Exhibit B, Health Net would reimburse [redacted]. This payment was deemed compensation for "Capitated Services."

[2] Health Net intends to bring claims for other years and jurisdictions in separate forums pursuant to terms of the applicable contracts.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

**B. Deficit and Bonus Payments under the MSA**

23. The MSA incentivized USHS to provide cost saving care through several mechanisms, including through Bonus and Deficit adjustments. MSA, Ex. B, § 3.2. The adjustment analysis resulted in a determination of whether, given USHS's financial performance, and assuming USHS met certain eligibility criteria, USHS would be entitled to additional payment from Health Net in the form of a "Bonus." *Id.* at § 3. Conversely, if USHS failed to meet its performance targets, USHS would owe to Health Net a portion of the capitation payments it already received from Health Net in the form of a "Deficit" amount. *Id.*

**C. The Health Benefit Ratio**

24. The Bonus and Deficit adjustments were determined by using a Health Benefit Ratio ("HBR"), which was the ratio of expenses,[3] divided by the applicable revenue, i.e., premiums attributable to USHS. *Id.* at § 1.4.

25. The parties set a "HBR Target" which was the benchmark USHS's compensation would be measured against. *Id.* at §§ 1.5, 3. The HBR Target [redacted] *Id.*

26. Broadly speaking, a lower HBR percentage would signify a lower cost of care for Health Net's member population serviced by USHS and, thus, also indicate better performance of USHS. If USHS's actual HBR was equal to or less than the HBR Target of

---

3 [redacted]

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

[redacted] USHS was eligible for a "Bonus" depending on the amount by which USHS landed below the HBR Target. *Id.* at § 3.

[redacted]

*Id.*

27. Conversely, a higher HBR percentage would signify a higher cost of care for Health Net's member population serviced by USHS and, thus, also indicate underperformance of USHS. If USHS's actual HBR was greater than the HBR Target, USHS would owe a "Deficit" amount. *Id.* at § 3.1.4.

28. [redacted]

[redacted]

[redacted]

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

[redacted]

*Id.*

29. This model used financial risk as a lever to incentivize USHS and, in turn, its providers to provide low-cost, high-quality care to Health Net's members.

## III. USHS'S PERFORMANCE UNDER THE MASTER SERVICES AGREEMENT

### A. 2022 Contract Year

30. Throughout Contract Year 2022,[4] USHS incurred [redacted] in total health care costs and generated [redacted] in applicable revenue.

31. USHS's HBR Target in that year was [redacted] In other words, to meet its performance target, USHS's 2022 costs would need to comprise [redacted] or less of all revenue associated with its patient population.

32. In 2022, USHS failed to achieve its HBR Target of [redacted], [redacted]

---

4 [redacted]

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

[redacted]

33. [redacted]

[redacted]

34. [redacted].

| | |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

35. Therefore, under the MSA, Health Net is owed a Deficit amount of [redacted].

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

**B. Deficit Notice**

36. On May 6, 2025, pursuant to Section 3 of Exhibit B to the MSA, Health Net provided formal notification to USHS of the Deficit owed to Health Net in the amount of [redacted]. Health Net Requested payment of such amount within sixty (60) days of receipt of the notice, i.e., by July 5, 2025.

37. In notifying USHS of the Deficit amount owed, Health Net complied with all requirements and obligations contained in the MSA, including those relating to timing of the notice.[5] The May 6, 2025 notice was issued after extensive participation of USHS in the process of arriving at the Deficit amount.

38. To date, USHS has failed to pay the [redacted] Deficit amount to Health Net.

39. As a direct and proximate result of USHS's failure to meet its payment obligations, including those under Section 3 of Exhibit B to the MSA, Health Net has suffered, and continues to suffer, millions of dollars in damages.

## IV. USHS'S ADDITIONAL ACTIONS TO EVADE ITS DEFICIT OBLIGATIONS

**A. USHS Agrees to Provide a Financial Backstop**

40. Given that USHS carried significant financial exposure under the MSA, including the potential downside risk of Deficit amounts that become due in the event of underperformance, Health Net required that USHS provide certain financial security to

[5] Health Net's issuance of the Deficit notice did not occur until May 6, 2025 in part due to delays associated with the COVID-19 pandemic and ongoing discussions between Health Net and USHS regarding the Deficit calculation.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

support USHS's ability to satisfy its payment obligations to Health Net. In particular, on December 10, 2018, Health Net notified USHS that Health Net would require USHS to secure a letter of credit for the relationship between the two parties to proceed.

41. Fundamentally, the letter of credit ensured that USHS could meet its obligation to repay any amounts owed pursuant to the relationship with Health Net, should those amounts come due and USHS default on payment, and was thus critically important to Health Net.

**B. USHS Represented It Had Complied with Its Agreement to Provide Financial Security**

42. USHS agreed to obtain and maintain a letter of credit in compliance with its agreement for the duration of the relationship and until USHS had performed all its obligations under the MSA. USHS represented to Health Net that USHS had complied with this obligation by procuring the issuance of a letter of credit from a Florida LLC called Craven House Capital North America, LLC ("Craven House"). USHS provided Health Net with formal documentation purportedly from Craven House in the form of letters of credit and confirmations of letters of credit.

43. For example, in 2019, USHS provided Health Net with a document entitled "Irrevocable Letter of Credit" dated March 29, 2019. The letter of credit identified the "issuer" as Craven House Capital North America LLC and the "Beneficiary" as "Health Net." The letter of credit's stated expiration date was [redacted], and the maximum stated amount was [redacted].

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

44. On January 1, 2020, in reliance on USHS's representation that it had procured a letter of credit in compliance with its agreement to do so, the parties executed the MSA.

45. As USHS's business and the scope of the parties' relationship expanded, USHS increased the maximum stated amounts of the letter of credit to meet the increased security requirements of Health Net. On or around September 1, 2021, USHS sent to Health Net a purported irrevocable letter of credit procured from Craven House in favor of Health Net in the amount of [redacted]. The letter stated that the credit would not expire until [redacted].

46. On January 1, 2023, in reliance on USHS's (and USHS's managing member, Arkos's) representations that they had procured a letter of credit in compliance with its agreement to do so, the parties executed the Network Services Agreement between Health Net and USHS's managing member and parent company, Arkos ("2023 NSA").[6] The 2023 NSA governed, among other things, Medicare compensation starting in calendar year 2023, superseding the compensation terms in the MSA. The 2023 NSA did not absolve USHS of its Deficit obligation for Contract Year 2022 under the MSA, including USHS's obligation to maintain security for such Deficit in the form of the letter of credit.

47. On or around March 24, 2023, USHS sent Health Net a written confirmation of an irrevocable letter of credit from Craven House in favor of Health Net in the amount

[6] Health Net does not bring any claim in this litigation under the 2023 NSA, which provides for arbitration of all disputes.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

[redacted].

48. On or around June 17, 2025, USHS sent another written confirmation of an irrevocable letter of credit from Craven House in favor of Health Net, this time in the amount of [redacted]. Letter from Craven House dated June 10, 2025, herein attached as **Exhibit 2.** [redacted]. This confirmation was signed by Steven Kotter "for and on behalf" of Craven House. The confirmation was sent to Health Net by the CEO of USHS's managing member, who said that the continuation of the letter of credit "[redacted]" Email from Eric Tanner sent June 17, 2025, herein attached as **Exhibit 3**.

49. By and through each of these letters, confirmations, and communications, USHS represented that it had procured a valid, legitimate letter of credit in satisfaction of its agreement to maintain a letter of credit supporting its Deficit obligation in Contract Year 2022. USHS further represented that should it default on any Deficit obligation, including in relation to Contract Year 2022, Health Net would have the ability to immediately draw upon the letter of credit in satisfaction of this payment obligation per the terms of the letter of credit. At no time did USHS communicate to Health Net that the letter of credit was illegitimate or not authentic, that Craven House was not a financial institution, defunct, or

[7] Starting in and after 2023, Health Net's communications with USHS regarding the 2020 MSA were often made by and through USHS's managing member and parent company, Arkos.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

insolvent, or that USHS, Arkos, or Craven House were otherwise at risk of defaulting on their obligations.

50. Based on these material representations and/or omissions, Health Net reasonably believed that the letter of credit was valid and in effect supporting USHS's Deficit obligation, including in relation to any Deficit amount owed by USHS for Contract Year 2022. In reliance on this belief, Health Net continued to perform under the MSA throughout 2022 and thereafter, including by continuing to make capitation payments to USHS and by not seeking to terminate or suspend the MSA or subsequent 2023 NSA, as it would have been entitled to do had Health Net known the truth about Craven Houe and the letter of credit.

**C. Health Net's Attempt to Draw on Letter of Credit**

51. On May 6, 2025, Health Net provided formal notice to USHS that it was obligated to pay [redacted] by July 5, 2025. On October 30, 2025, several months after USHS defaulted on its obligation to make payment, Health Net presented Craven House with a Presentation for Drawing seeking to draw upon the letter of credit the [redacted] Deficit amount owed for Contract Year 2022. *See* Presentation for Drawing, herein attached as **Exhibit 4.**

52. This Presentation for Drawing strictly complied with the letter of credit.[8]

[8] This formal notice certified that USHS was in default under the Agreement and failed to cure such default following 30 days written notice. The notice further contained: a beneficiary draw certificate in the form required by the letter of credit; the deficit notice dated May 6, 2025; USHS's authorization for draws; the underlying letter of credit; and beneficiary wire instructions. A copy of the Presentation for Drawing was delivered concurrently to USHS.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

53. Despite the prior statements of USHS's managing member regarding the centrality of the letter of credit to the parties' relationship, on November 14, 2025, USHS sent a letter to Craven House attempting to stop any distribution of funds and unilaterally declaring Health Net's Presentation for Drawing invalid.

54. Craven House did not honor Health Net's Presentation for Drawing or respond to it at all. This failure and USHS's unjustified and unusual actions in attempting to stop the draw request prompted Health Net to more closely examine the purported letter of credit from Craven House. The investigation that followed called into question not only the legitimacy and authenticity of the letter of credit but also the propriety of USHS's role in procuring it. For example:

(a) Craven House purportedly signed the letter through Steven Kotter, "for and on behalf of" Craven House. However, Mr. Kotter was, and continues to be, ***an employee of <u>USHS's managing member</u>, Arkos***—not Craven House.

(b) The telephone number provided in the letters purportedly from Craven House connected to a different organization.

(c) Craven House's stated mailing address was not in fact for Craven House but a law firm.

(d) Craven House's website was inactive.

(e) Craven House's affiliate based in the UK had been suspended from trading and delisted.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

(f) Publicly available information suggests that Craven House's affiliate was experiencing a severe liquidity crisis in 2023 and 2024 with short-term liabilities as much as eight times the amount of its liquid assets and with total assets well below the amounts provided for in the letter of credit.

55. On November 19, 2025, Health Net wrote to USHS outlining Health Net's serious concerns, including regarding the legitimacy, authenticity, and validity of the letter of credit and Craven House. The letter requested that USHS address Health Net's concerns and instruct Craven House to honor the letter of credit.

56. USHS failed to do so. Instead, USHS's response raised additional questions regarding their complicity. USHS responded on November 21, 2025 in a letter from legal counsel ***defending*** Craven House's ability to honor the letter of credit and dismissing Health Net's concerns as unfounded. USHS replied: [redacted] USHS did not agree to investigate the issues raised by Health Net. Nor did USHS explain why an ***employee of its managing member, Arkos*** signed a letter of credit issued by Craven House—information that should have been readily available to USHS. Instead, USHS attempted to [redacted]

**D. Craven House's Dissolution Confirms Health Net's Concerns**

57. Shortly thereafter, on December 2, 2025, Craven House voluntarily filed Articles of Dissolution with the Florida Department of State. Health Net learned of this

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

dissolution through its own independent research, not through USHS, Arkos, or Craven House. To date, neither USHS nor Arkos has addressed the invalidity of the letter of credit, Craven House's dissolution, or Health Net's concerns articulated in its November 19, 2025 letter. Nor has USHS taken any action to cure the material breach of its letter of credit obligation.

58. The obvious red flags outlined above—including the confirmation of the letter of credit signed by USHS's managing member and sudden voluntary dissolution of Craven House immediately following Health Net's Presentation for Drawing—call into question not just the legitimacy of the letter of credit and Craven House but USHS's involvement in procuring these documents over the course of the MSA. This will be the subject of discovery in the lawsuit.

59. The representations that USHS would, and indeed did, procure valid letters of credit, and subsequent suggestions and assurances that the letter of credit remained valid and effective—despite clear evidence to the contrary—constitute material representations of fact to Health Net. At no time did USHS attempt to address these issues or inform Health Net that Craven House was defunct, insolvent, or at risk of defaulting on its obligations. In reliance on USHS's representations and omissions outlined herein, Health Net continued performance under the MSA, including by continuing to make capitation payments to USHS for the duration of 2022 and thereafter.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

**COUNT I**
**BREACH OF CONTRACT**

60. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

61. The MSA, and USHS's promises and obligations relating to the letter of credit, are valid, binding, and enforceable contracts.

62. Prior to USHS's breach, Health Net performed all the stipulations, conditions, and agreements required of it under the terms of parties' agreement.

63. USHS failed to fulfil its obligations as set forth in detail in this Petition.

64. Specifically, year-end performance analysis for Contract Year 2022 resulted in a determination that USHS underperformed its performance metrics and therefore owed a Deficit amount pursuant to the terms of the MSA.

65. Health Net issued its Deficit notice on May 6, 2025 that the Deficit amount for Contract Year 2022 would be due by July 5, 2025.

66. USHS has failed to pay Health Net the Deficit amount for Contract Year 2022 by July 5, 2025 or at all.

67. Furthermore, USHS was obligated to maintain a letter of credit in an appropriate amount as determined by Health Net to cover any potential Deficit amount owed to Health Net under the MSA.

68. USHS breached its obligation in several ways:

(a) USHS failed to maintain any letter of credit in any form.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

(b) USHS failed to procure a valid letter of credit enabling Health Net to draw on the credit after USHS's default on its obligation to pay Health Net the Deficit amount for Contract Year 2022.

(c) USHS failed to procure a valid letter of credit effective for the entire term of the agreement and until USHS had performed all its obligations.

(d) The letter of credit purportedly procured by USHS is not in a satisfactory form to Health Net.

(e) The entity from which USHS purportedly procured its letter of credit is not a satisfactory financial institution.

(f) Despite having no contractual or legal right to do so, by and through its improper communication to Craven House dated November 14, 2025, USHS took steps to interfere with Health Net's draw presentation on the letter of credit.

(g) Health Net's valid Presentation for Drawing on the letter of credit was, in fact, not responded to by Craven House, let alone honored.

(h) After Craven House's voluntary dissolution, USHS has failed to procure a valid letter of credit.

69. These actions and inactions deprive Health Net of the core benefit of the agreement—security against downside risk.

70. USHS's contractual breaches have directly and proximately caused Health Net to incur significant damages in an amount to be determined at trial.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with pre- and post- judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT II**
**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

71. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

72. The MSA, and USHS's promises and obligations relating to the letter of credit, are valid, binding, and enforceable contracts.

73. Prior to USHS's breach, Health Net performed all the stipulations, conditions, and agreements required of it under the terms of the parties' agreement.

74. As part of the contractual relationship between Health Net and USHS, there was an implied covenant of good faith and fair dealing.

75. USHS, by and through its actions and inactions alleged in this Petition, breached its contractual and/or common law implied covenant of good faith and fair dealing to Health Net by acting in bad faith, dishonestly, opportunistically, arbitrarily, and capriciously in its dealings with Health Net.

76. Specifically, USHS breached its duty of good faith in several ways:

(a) USHS failed to meet its obligation to maintain adequate credit and, at the same time, represented to Health Net that it had in fact complied with that obligation.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

(b) USHS took steps to subvert Health Net's right and ability to draw upon the letter of credit.

(c) USHS concealed the fact that Craven House did not have the ability to satisfy any valid draw under the letter credit and failed to inform Health Net that, in fact, Craven House was incapable of honoring the letter of credit.

(d) USHS failed to take reasonable steps—or any steps at all—to verify Craven House's ability to satisfy any valid draw under the letter of credit.

(e) USHS dismissed Health Net's concerns regarding Craven House as unfounded. To date, USHS has not informed Health Net that Craven House filed for voluntary dissolution or taken steps to satisfy its letter of credit obligation.

77. Notwithstanding these breaches, USHS continued to accept capitation payments from Health Net with knowledge that its representations regarding the letter of credit were false or, at a minimum, with reckless disregard for their truth.

78. Health Net was directly and proximately harmed by USHS's breach of the covenant of good faith and fair dealing, as set forth herein in this Petition.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with pre- and post- judgment interest, costs, and such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

**COUNT III**
**FRAUDULENT INDUCEMENT**

79. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

80. USHS submitted to Health Net, or caused to be submitted, copies of the letter of credit and confirmations of letter of credit in support of USHS's letter of credit obligation. USHS also communicated to Health Net that the letters of credit were valid and authentic.

81. USHS knowingly made material misrepresentations and omissions to Health Net with the intent to induce Health Net to rely on those misrepresentations and omissions by continuing to perform under the MSA, to remain in that contractual relationship, and to not find USHS in material breach of the parties' agreement. As evidenced by the letter sent by USHS's managing member, USHS wanted Health Net to view the letter of credit as a demonstration of good faith and an investment in building long-term success.

82. Specifically, USHS represented that it had procured a letter of credit in compliance with its letter of credit obligation. By and through transmission of the letter of credit and communications confirming the existence and validity of the letter of credit, including but not limited to the communications identified above on or around March 29, 2019, September 1, 2021, March 24, 2023, and June 17, 2025, USHS represented to Health Net that the letter of credit existed, was authentic, valid, and would be in effect at all times relevant to the claims in this lawsuit.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

83. USHS took active steps to perpetuate Health Net's genuine belief that the letter of credit was valid. This is evidenced in several ways, including but not limited to USHS's confirmations of the validity of the letter of credit, USHS's use of its own managing member's CEO to sign a letter confirming the validity of the letter of credit purportedly "for and on behalf of" Craven House, and USHS's failure to verify Craven House's ability to satisfy the letter of credit.

84. At no time did USHS disclose to Health Net that the letter of credit was invalid or not authentic, that Craven House was illegitimate and incapable of satisfying its obligations under the letter of credit, or that USHS was in default under its letter of credit obligation.

85. That the letter of credit was invalid and not authentic, that Craven House was illegitimate and incapable of satisfying its obligations under the letter of credit, and that USHS was in default under its letter of credit obligation was information material to Health Net's determination of whether to continue to perform under the MSA and to remain in that contractual relationship.

86. USHS's representations and omissions were false and misleading, and the letter of credit was invalid. In response to Health Net's presentation of draw, Craven House failed to respond entirely and filed for voluntary dissolution just days later. Health Net subsequently learned of multiple facts suggesting the letter was illegitimate and fraudulent:

(a) Craven House did not appear to be associated with any reputable or known financial institution.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

(b) The telephone number provided in the letters purportedly from Craven House connected to a different organization.

(c) Craven House's stated mailing address was not in fact for Craven House but a law firm.

(d) Craven House's website was inactive.

(e) Craven House's affiliate based in the UK had been suspended from trading and delisted.

(f) Craven House's affiliate was experiencing a severe liquidity crisis in 2023 and 2024 with total assets incapable of satisfying the letter of credit.

87. To date, USHS has not informed Health Net of Craven House's dissolution or satisfied its letter of credit obligation by other means.

88. Upon information and belief, USHS knew that its representations and omissions regarding the letter of credit, Craven House, and compliance with its letter of credit obligation were false, or made its statements with reckless disregard of the truth or falsity of its statements. Among other reasons, USHS's own managing member signed the letter confirming the existence and validity of the letter of credit. Furthermore, Health Net raised its concerns to USHS regarding the validity of the letter of credit, viability of Craven House, and compliance with the MSA. Rather than respond to or investigate those concerns, USHS summarily dismissed them.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

89. USHS made the misrepresentations and omissions with the intent to induce Health Net to continue making capitation payments under the MSA and to actively conceal its noncompliance with its letter of credit obligation.

90. USHS had a duty to Health Net to accurately represent the validity, legitimacy, or authenticity of any financial instrument provided by USHS for Health Net's benefit, such as the letter of credit, and, upon learning that any financial instrument was or may be invalid, illegitimate, or inauthentic, to promptly notify Health Net of the same.

91. As discussed above, Health Net reasonably relied on the misrepresentations and omissions and continued to perform under the MSA and make capitation payments. Health Net reasonably expected USHS to tell the truth that it had procured a valid letter of credit from a legitimate financial institution in compliance with its letter of credit obligation and to affirmatively notify Health Net in the event that any of the foregoing expectations became untrue. Health Net reasonably relied upon USHS's representations and omissions by entering the contractual relationship, continuing to perform under the MSA, and not terminating the MSA.

92. Once Health Net identified the concerns with the letter of credit and Craven House, it took prompt action to raise the issue to USHS.

93. Health Net was ignorant to the falsity of those statements and omissions.

94. Health Net, including as a business associate of USHS, a counterparty under the MSA, and/or a beneficiary of the letter of credit, had the right to rely upon the representations of USHS.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

95. As a direct and proximate result of USHS's misrepresentations and omissions, Health Net has been damaged in a substantial amount to be determined at trial, including:

(a) By causing Health Net to continue performance under the MSA and making capitation payments that it was ultimately unable to recover and causing Health Net to forgo other opportunities that Health Net would have pursued but for its continued performance under the MSA;

(b) By preventing Health Net from the ability to immediately recover from the letter of credit and the loss of the benefits and opportunities associated with immediate possession of the amount owed;

(c) By causing reputational and extra-contractual financial harm to Health Net in an amount to be determined at trial;

(d) By causing Health Net to incur costs, attorneys' fees, and other damages in its pursuit of recovering the letter of credit amounts from Craven House and USHS; and

(e) By causing other damages to be detailed at trial.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with punitive damages, pre- and post-judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

**COUNT IV**
**FRAUDULENT CONCEALMENT**

96. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

97. USHS submitted to Health Net, or caused to be submitted, copies of the letter of credit and confirmations of letter of credit in support of USHS's letter of credit obligation. USHS also communicated to Health Net that the letters of credit were valid and authentic.

98. USHS knowingly made material misrepresentations and omissions to Health Net with the intent to induce Health Net to rely on those misrepresentations and omissions by continuing to perform under the MSA, to remain in that contractual relationship, and to not find USHS in material breach of the parties' agreement. As evidenced by the letter sent by USHS's managing member, USHS wanted Health Net to view the letter of credit as a demonstration of good faith and an investment in building long-term success.

99. Specifically, USHS represented that it had procured a letter of credit in compliance with its letter of credit obligation. By and through transmission of the letter of credit and communications confirming the existence and validity of the letter of credit, including but not limited to the communications identified above on or around March 29, 2019, September 1, 2021, March 24, 2023, and June 17, 2025, USHS represented to Health Net that the letter of credit existed, was authentic, valid, and would be in effect at all times relevant to the claims in this lawsuit.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

100. USHS took active steps to perpetuate Health Net's genuine belief that the letter of credit was valid. This is evidenced in several ways, including but not limited to USHS's confirmations of the validity of the letter of credit, USHS's use of its own managing member's CEO to sign a letter confirming the validity of the letter of credit purportedly "for and on behalf of" Craven House, and USHS's failure to verify Craven House's ability to satisfy the letter of credit.

101. At no time did USHS disclose to Health Net that the letter of credit was invalid or not authentic, that Craven House was illegitimate and incapable of satisfying its obligations under the letter of credit, or that USHS was in default under its letter of credit obligation.

102. That the letter of credit was invalid and not authentic, that Craven House was illegitimate and incapable of satisfying its obligations under the letter of credit, and that USHS was in default under its letter of credit obligation was information material to Health Net's determination of whether to continue to perform under the MSA and to remain in that contractual relationship.

103. USHS's representations and omissions were false and misleading, and the letter of credit was invalid. In response to Health Net's presentation of draw, Craven House failed to respond entirely and filed for voluntary dissolution just days later. Health Net subsequently learned of multiple facts suggesting the letter was illegitimate and fraudulent:

(a) Craven House did not appear to be associated with any reputable or known financial institution.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

(b) The telephone number provided in the letters purportedly from Craven House connected to a different organization.

(c) Craven House's stated mailing address was not in fact for Craven House but a law firm.

(d) Craven House's website was inactive.

(e) Craven House's affiliate based in the UK had been suspended from trading and delisted.

(f) Craven House's affiliate was experiencing a severe liquidity crisis in 2023 and 2024 with total assets incapable of satisfying the letter of credit.

104. To date, USHS has not informed Health Net of Craven House's dissolution or satisfied its letter of credit obligation by other means.

105. Upon information and belief, USHS knew that its representations and omissions regarding the letter of credit, Craven House, and compliance with its letter of credit obligation were false, or made its statements with reckless disregard of the truth or falsity of its statements. Among other reasons, USHS's own managing member signed the letter confirming the existence and validity of the letter of credit. Furthermore, Health Net raised its concerns to USHS regarding the validity of the letter of credit, viability of Craven House, and compliance with the MSA. Rather than respond to or investigate those concerns, USHS summarily dismissed them.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

106. USHS made the misrepresentations and omissions with the intent to induce Health Net to continue making capitation payments under the MSA and to actively conceal its noncompliance with its letter of credit obligation.

107. USHS had a duty to Health Net to accurately represent the validity, legitimacy, or authenticity of any financial instrument provided by USHS for Health Net's benefit, such as the letter of credit, and, upon learning that any financial instrument was or may be invalid, illegitimate, or inauthentic, to promptly notify Health Net of the same.

108. As discussed above, Health Net reasonably relied on the misrepresentations and omissions and continued to perform under the MSA and make capitation payments. Health Net reasonably expected USHS to tell the truth that it had procured a valid letter of credit from a legitimate financial institution in compliance with its letter of credit obligation and to affirmatively notify Health Net in the event that any of the foregoing expectations became untrue. Health Net reasonably relied upon USHS's representations and omissions by entering the contractual relationship, continuing to perform under the MSA, and not terminating the MSA.

109. Once Health Net identified the concerns with the letter of credit and Craven House, it took prompt action to raise the issue to USHS.

110. Health Net was ignorant to the falsity of those statements and omissions.

111. Health Net, including as a business associate of USHS, a counterparty under the MSA, and/or a beneficiary of the letter of credit, had the right to rely upon the representations of USHS.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

112. As a direct and proximate result of USHS's misrepresentations and omissions, Health Net has been damaged in a substantial amount to be determined at trial, including:

(a) By causing Health Net to continue performance under the MSA and making capitation payments that it was ultimately unable to recover and causing Health Net to forgo other opportunities that Health Net would have pursued but for its continued performance under the MSA;

(b) By preventing Health Net from the ability to immediately recover from the letter of credit and the loss of the benefits and opportunities associated with immediate possession of the amount owed;

(c) By causing reputational and extra-contractual financial harm to Health Net in an amount to be determined at trial;

(d) By causing Health Net to incur costs, attorneys' fees, and other damages in its pursuit of recovering the letter of credit amounts from Craven House and USHS; and

(e) By causing other damages to be detailed at trial.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with punitive damages, pre- and post-judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

**COUNT V**
**NEGLIGENT MISREPRESENTATION**

113. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

114. The following information was material to whether Health Net proceeded with performance under the MSA, remained in that contractual relationship, and continued to pay capitation payments to USHS:

(a) That USHS had purportedly procured a letter of credit in compliance of its letter of credit obligation;

(b) That USHS had provided Health Net with copies of the letter of credit, and written confirmations of its existence and validity for the duration of the relevant time period;

(c) That the letter of credit was, in fact, invalid for a portion or entirety of the relevant time period; and

(d) That Craven House was not capable of satisfying the terms of the letter of credit.

115. By submitting the foregoing information, causing it to be submitted, or concealing it, USHS represented that the information it did so provide was true, accurate, and complete, and that USHS did not knowingly, recklessly, or negligently misrepresent or omit material facts.

116. The submission of the false and incomplete information by USHS to Health Net happened in the course of business as a management services organization that

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

contracts with Health Net on its own behalf and on behalf of its network providers for purposes of implementing and administering Health Net's value-based health plan. USHS had a pecuniary interest in the MSA and its implementation of the agreement, including the procurement of a letter of credit to satisfy its obligation to Health Net.

117. USHS's statements and omissions were false and misleading, and USHS either knew these misrepresentations and omissions were false, made them without knowledge of their truth or falsity, or made them under circumstances where USHS should have known of their falsity. In truth, the letter of credit was invalid at the time that Health Net submitted its Presentation for Drawing—and likely was invalid when issued by Craven House. In communicating this information to Health Net, USHS failed to exercise reasonable care and competence. The letter of credit was signed by USHS's managing member and invalid, and Craven House did not have the financial ability to pay such amounts and would be seeking immediate dissolution. USHS failed to disclose these facts.

118. USHS made the representations and omissions for the guidance of Health Net in their business transaction. USHS intended that Health Net would rely on the representations and omissions as to its compliance with the letter of credit obligation to Health Net.

119. Health Net was ignorant to the falsity of those statements and omissions.

120. Health Net justifiability relied on the false representations and omissions by USHS in its decision to enter and maintain the contractual relationship with USHS. As a result, over the course of Contract Year 2022, Health Net continued to make capitation payments to USHS in reliance on the fact that, should USHS owe to Health Net any Deficit

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

amount, such amount would be secured by the letter of credit purportedly obtained by USHS.

121. USHS had superior knowledge of the truth and falsity of the representations and omissions.

122. USHS had a duty to disclose to Health Net information material to the parties' performance under the MSA, including USHS's compliance with the letter of credit obligation to Health Net.

123. In connection with USHS's purported compliance with the letter of credit obligation, USHS failed to disclose that the letter of credit was invalid, that Craven House was incapable of satisfying its obligations under the letter of credit, and that USHS was in material breach of the letter of credit obligation to Health Net.

124. As direct and proximate result of the foregoing, Health Net was damaged in a substantial amount to be determined at trial.

WHEREFORE Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with pre- and post- judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT VI
## AIDING AND ABETTING A TORT

125. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

126. Craven House and/or Arkos engaged in the commission of torts upon Health

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

Net when it purported to procure and issue a valid letter of credit and subsequent confirmations in furtherance of USHS's relationship with Health Net.

127. Craven House and/or Arkos represented to Health Net that this letter of credit was valid in the amount for which it was issued for the duration of the relevant time period and that Craven House had the financial ability and willingness to satisfy valid draws pursuant to the letter of credit.

128. In reality, Craven House was neither willing nor able to satisfy draws on the letter of credit, but Craven House and/or Arkos falsely made representations to the contrary.

129. Upon information and belief, USHS knew that the conduct described herein was occurring and was a breach of duties owed to Health Net.

130. USHS provided substantial assistance and encouragement to Craven House and/or Arkos to further the tortious conduct, with intent to further Craven House and/or Arkos's fraud through its conduct including:

(a) By treating the letter of credit and confirmations as valid;

(b) By participating in the submission of inaccurate confirmations of the letters of credit;

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

(c) By causing the employee of its managing member to sign a confirmation letter of a fraudulent letter of credit;

(d) By communicating to Health Net, or causing the communications to be made, that the letter of credit and confirmations were valid;

(e) By failing to respond to or investigate the concerns identified by Health Net in its November 19, 2025 letter;

(f) By communicating to Health Net that its concerns regarding the letter of credit and Craven House were unfounded; and

(g) By failing to notify Health Net of Craven House's voluntary dissolution.

131. Health Net was ignorant to the falsity of Craven House and/or Arkos's statements.

132. Health Net relied on Craven House and/or Arkos's statements and, as a business associate of both Craven House and Arkos, Health Net had the right to rely on such statements.

133. Health Net suffered damages resulting from this fraud.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with punitive damages, pre- and post-judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

## COUNT VII
## CIVIL CONSPIRACY

134. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

135. USHS, Arkos, and Craven House agreed to act together for the wrongful purpose of misrepresenting the terms, validity, and authenticity of the letter of credit issued for Health Net's benefit.

136. The goal of the agreement was to commit the illegal act of unlawfully and deceptively procuring funds from Health Net in the form of continued capitation payments under the MSA for the reasons set forth above through fraud, negligent misrepresentation, and aiding and abetting.

137. In order to achieve the aforementioned unlawful acts and objectives, USHS, Arkos, and Craven House conspired and agreed to take overt acts, including:

(a) By treating the letter of credit and confirmations as valid;

(b) By participating in the submission of inaccurate confirmations of the letters of credit;

(c) By causing Arkos's employee to sign a confirmation letter of a fraudulent letter of credit;

(d) By communicating to Health Net the letter of credit, confirmations, and other communications confirming the validity of the letter of credit;

(e) By failing to respond to or investigate the concerns identified by

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

Health Net in its November 19, 2025 letter;

(f) By communicating to Health Net that its concerns regarding the letter of credit and Craven House were unfounded; and

(g) By failing to notify Health Net of Craven House's voluntary dissolution.

138. USHS was aware of the aforementioned fraud committed by Craven House and/or Arkos and explicitly or tacitly agreed to the fraudulent conduct.

139. The concerted acts of USHS, Arkos, and Craven House have caused Health Net to be damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with punitive damages, pre- and post-judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT VIII**
**UNJUST ENRICHMENT**

140. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

141. Health Net conferred a benefit upon USHS, at Health Net's expense, by making capitation payments to USHS during Contract Year 2022 (and to Arkos thereafter) on the misplaced belief that any Deficit amount would be repaid by USHS and would be secured by the letter of credit.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

142. USHS received and appreciated a direct benefit from Health Net as a result of USHS's representations and the resulting capitation payments made by Health Net in reliance thereon.

143. The benefits conferred by Health Net to USHS were not conferred gratuitously.

144. USHS accepted and retained the benefit conferred by Health Net under inequitable and/or unjust circumstances. In particular, USHS was not contractually entitled to retain a substantial portion of the capitation payments it had received and obligated to repay those amounts to Health Net. Additionally, the benefit was obtained in the first instance only because of USHS's provision of false, misleading, and incomplete information regarding the letter of credit and USHS's compliance with its letter of credit obligation.

145. In the circumstances, it would be unjust and inequitable to allow USHS to retain the benefit conferred by Health Net to USHS without just compensation in an amount to be determined at trial.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with pre- and post- judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT IX**
**MONEY HAD AND RECEIVED**

146. Health Net realleges and incorporates herein all preceding paragraphs as if

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

fully set forth herein.

147. USHS received money from Health Net that in good conscious belongs to Health Net.

148. Health Net is entitled both in law and equity to return of the money.

149. USHS has no legal or equitable right to keep the money, and it would be unfair and unconscionable for USHS to do so.

WHEREFORE, Plaintiff Health Net of Arizona, Inc. requests that judgment is entered in its favor and against Defendant US Health Systems, LLC in an amount to be determined at trial but in excess of $100,000, together with pre- and post- judgment interest, costs, and attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT X**
**DECLARATORY RELIEF**

150. Health Net realleges and incorporates herein all preceding paragraphs as if fully set forth herein.

151. For the reasons stated herein, Health Net seeks declaratory relief including declarations that:

a. USHS is obligated to satisfy its letter of credit obligation until USHS has performed all of its obligations under the MSA, including in relation to any Deficit amount owed for 2022.

b. The parties' relationship as reflected in the MSA has terminated and Health Net has no further obligation to USHS thereunder except those obligations under the MSA that expressly survive termination of the

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

agreement.

**DEMAND FOR JURY TRIAL**

Plaintiff Health Net of Arizona, Inc. hereby requests a trial by jury on all counts so triable.

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Aaron Chickos*
Sarah Hellmann, No. 50373
Aaron Chickos, No. 62072
Andy Krokstrom, No. 74728
8001 Forsyth Blvd. Suite 1500
St. Louis, MO 63105
Phone: 314.480.1500
Facsimile: 314.480.1505
sarah.hellmann@huschblackwell.com
aaron.chickos@huschblackwell.com
andy.krokstrom@huschblackwell.com

*Attorneys for Plaintiff Health Net of Arizona, Inc. d/b/a Arizona Complete Health*

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

# Exhibit 1 – Confidential
# To Be Filed Under Seal

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

# Exhibit 2 – Confidential
# To Be Filed Under Seal

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

# Exhibit 3 – Confidential
# To Be Filed Under Seal

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

# Exhibit 4 – Confidential
# To Be Filed Under Seal

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| Health Net of Arizona, Inc. d/b/a Arizona Complete Health, Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Division No. |
| US Health Systems, LLC, d/b/a USHS Defendant. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |

**HEALTH NET'S MOTION TO FILE UNDER SEAL**

Plaintiff Health Net of Arizona, Inc. d/b/a Arizona Complete Health ("Health Net") hereby moves this Court for an Order directing that Health Net's Petition against Defendant US Health Systems, LLC d/b/a USHS ("USHS") may be filed under seal. In support, Health Net states as follows:

1. Health Net intends to file a Petition for amounts owed by USHS pursuant to a confidential contract between the Parties.

2. Limited portions of the Petition reference the contract, which is referred to as the 2020 Master Services Agreement (the "MSA"). This Agreement contains sensitive pricing terms which were the result of negotiations between the Parties. The MSA further contains the specifically negotiated terms and conditions of the Parties' business relationship. Both the pricing terms, and the overarching terms that the Parties' negotiated are by their very nature proprietary trade secrets.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

3. By its very terms the MSA notes that any business, technical, marketing, financial, customer, vendor, employee, marketing, sales research and development, or other information" is Confidential Information. MSA § 7.1. What's more, the MSA mandates that any information which is created, prepared or developed by USHS in connection with the performance of the Agreement is Confidential Information. *Id*

4. As part of its Petition, Exhibits 1, 2, 3, and 4 contain sensitive commercial information including but not limited to trade secret financial information, and confidential information that was created in connection with the performance of the Agreement that warrants sealing said exhibits from public view. These exhibits are referenced throughout the Petition.

5. Health Net respectfully requests that this Court allow the portions of the Petition which reference the MSA or its financial terms to be publicly redacted and filed under seal.

6. Health Net further requests that the Exhibits, which are confidential in their entirety, to be filed under seal.

7. A proposed order is also filed herewith.

WHEREFORE, for the foregoing reasons, Health Net requests this Court grant its Motion to File Under Seal and for such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

Dated: February 19, 2026

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Aaron Chickos*
Sarah Hellmann, No. 50373
Aaron Chickos, No. 62072
Andy Krokstrom, No. 74728
8001 Forsyth Blvd. Suite 1500
St. Louis, MO 63105
Phone: 314.480.1500
Facsimile: 314.480.1505
sarah.hellmann@huschblackwell.com
aaron.chickos@huschblackwell.com
andy.krokstrom@huschblackwell.com

*Attorneys for Plaintiff Health Net of Arizona, Inc. d/b/a Arizona Complete Health*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 19th day of February, 2026, a true and correct copy of the above and foregoing was electronically filed with the Court which sent notification to all parties entitled to service.

/s/ *Aaron Chickos*

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| Health Net of Arizona, Inc. | ) | |
| d/b/a Arizona Complete Health, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Division No. |
| US Health Systems, LLC, d/b/a USHS | ) | |
| Defendant. | ) | |

**ORDER**

Pending before this Court is Plaintiff Health Net of Arizona Inc.'s Motion to File Its Petition under seal. Upon due consideration and for good cause shown, Plaintiff's Motion is GRANTED and Plaintiff's Petition and its associated Exhibit is hereby filed under seal.

________________________ ________________________________________
Date Judge

26SL-CC01932

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Health Net of Arizona dba Arizona Complete Health
Plaintiff/Petitioner

February 19, 2026
Date

Case Number

vs.

Division

US Health Systems LLC, dba USHS
Defendant/Respondent

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Health Net of Arizona dba Arizona Complete Health (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Chris Medley/Medley Process Service 9234 Kingston Pike Suite 462, Knoxville TN 37922 888-855-0912
Name of Process Server Address Telephone

Name of Process Server Address or in the Alternative Telephone

Name of Process Server Address or in the Alternative Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
US Health Systems, LLC, d/b/a USHS c/o Cogency Global, Inc.
Name
300 West Clarenton, Suite 240
Address
Phoenix, AZ
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By /S/ Adam Dockery
Deputy Clerk

02/27/2026
Date

Signature of Attorney/Plaintiff/Petitioner
62072
Bar No.
8001 Forsyth Blvd., Suite 1500, St. Louis MO 63105
Address
(314) 480-1500 (314) 480-1505
Phone No. Fax No.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>JEFFERY THOMAS MCPHERSON | **Case Number: 26SL-CC01932** | |
| Plaintiff/Petitioner:<br>HEALTH NET OF ARIZONA INC<br>DBA: ARIZONA COMPLETE HEALTH<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>AARON JAMES CHICKOS<br>8001 Forsyth Boulevard<br>Suite 1500<br>ST.LOUIS, MO 63105 | |
| Defendant/Respondent:<br>US HEALTH SYSTEMS, LLC<br>DBA: USHS | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Contract-Other | | |

**The State of Missouri to**: **US HEALTH SYSTEMS, LLC**
**Alias:**
**DBA: USHS**

**RA-COGENCY GLOBAL INC**
**300 WEST CLARENTON**
**SUITE 240**
**PHOENIX, AZ 85013**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

27-FEB-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD

**Officer's or Server's Affidavit of Service**

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ________________________________ of _____________________ County, _______________ (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ___________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________________ (name) ________________________(title).

☐ other: ____________________________________________________________________.

Served at _________________________________________________________________ (address) in ____________________________ (County), ____________ (state), on _________________(date) at __________ (time).

_____________________________________ _____________________________________
Printed Name of Officer or Server Signature of Officer or Server

**Subscribed and sworn to** before me this ____ (day) ____________ (month), ______ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.

☐ the judge of the court of which affiant is an officer.

*(Seal)*

☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).

☐ authorized to administer oaths. (use for court-appointed server)

_________________________________
Signature and Title

**Service Fees**

| | |
|---|---|
| Summons | $____________ |
| Non Est | $____________ |
| Mileage | $____________ (______ miles @ $.______ per mile) |
| **Total** | **$____________** |

See the following page for directions to officer making return on service of summons.

Case Number: 26SL-CC01932

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within 30 days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - St Louis County - February 19, 2026 - 04:57 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| Health Net of Arizona, Inc. d/b/a Arizona Complete Health, Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Division No. |
| US Health Systems, LLC, d/b/a USHS Defendant. | ) | |

FILED
3-6-26
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

**ORDER**

Pending before this Court is Plaintiff Health Net of Arizona Inc.'s Motion to File Its Petition under seal. Upon due consideration and for good cause shown, Plaintiff's Motion is GRANTED and Plaintiff's Petition and its associated Exhibit is hereby filed under seal.

Bruce Hilton Division 13
Presiding Judge
March 09, 2026

_____________________ Date

_____________________ Judge