**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Health Net of Arizona, Inc. | ) | |
| d/b/a Arizona Complete Health, | ) | |
| | ) | |
| | ) | Case No. 4:26-cv-00417-CMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| US Health Systems, LLC d/b/a USHS | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS OR STAY**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT ....................................................................................................................... 2

    I.      USHS Consented to this Court's Jurisdiction as to Each Count........................... 2

          A.      The Forum Selection Clause Encompasses Health Net's Claims in Tort and Equity. ......................................................................................... 2

          B.      USHS's Own Authority Undercuts Its Personal Jurisdiction Argument. ... 4

          C.      USHS Ignores the Alleged Fraudulent Conduct During the Term of the MSA. ....................................................................................................... 5

    II.     Counts III Through X Should Not Be Stayed Pending the Resolution of a Separate Dispute Subject to Arbitration. ................................................................. 6

    III.    Health Net Has Sufficiently Pled Its Claims............................................................ 7

          A.      Count I: Breach of Contract Claim. .............................................................. 7

              1.      MSA's timing requirements. ............................................................ 7

              2.      USHS's LOC Obligation. ................................................................ 8

          B.      Count II: Implied Covenant Claim. .............................................................. 9

          C.      Counts III-IV: Fraudulent Inducement and Fraudulent Concealment Claims. ......................................................................................................... 9

          D.      Count V: Negligent Misrepresentation Claim ......................................... 13

          E.      Counts VI and VII: Aiding and Abetting and Civil Conspiracy Claims. . 13

          F.      Counts VIII and IX: Unjust Enrichment and Money Had and Received Claims. ....................................................................................................... 14

          G.      Count X: Declaratory Judgment. ............................................................... 15

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*11500, LLC, v. Cummings*,
  2008 WL 4681371 (W.D. Mo. Oct. 22, 2008)................................................................ 5

*ABC Water LLC v. APlus Water LLC*,
  2019 WL 3858193 (D. Ariz. Aug. 16, 2019)................................................................ 8

*Aragon v. Wal-Mart Stores E., LP*,
  735 F.3d 807 (8th Cir. 2013) ...................................................................................... 9

*Arnold & Associates, Inc. v. Misys Healthcare Sys.*,
  275 F. Supp. 2d 1013 (D. Ariz. 2003) ...................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................. 2, 3

*CIC Group, Inc. v. Mitchell*,
  2010 WL 5184990 (E.D. Mo. Dec. 15, 2010) ......................................................... 3, 4

*Cold Front Logistics, LLC v. Auto-Owners (Mut.) Ins. Co.*,
  2025 WL 1908980 (W.D. Mo. July 10, 2025)........................................................... 13

*Comerica Bank v. Mahmoodi*,
  229 P.3d 1031 (Ariz. Ct. App. 2010)....................................................................... 11

*Corewest Res. LLC-FZ v. Gideon Grp. Inc.*,
  2025 WL 3637447 (D. Ariz. Dec. 16, 2025) ............................................................ 11

*Dominium Austin Partners, LLC v. Emerson*,
  248 F.3d 720 (8th Cir. 2001) ...................................................................................... 3

*Fogle Enterprises Inc. v. CiCi Enterprises, L.P.*,
  2022 WL 5246446 (W.D. Mo. Oct. 6, 2022)............................................................... 3

*Glick v. W. Power Sports, Inc.*,
  944 F.3d 714 (8th Cir. 2019) ...................................................................................... 2

*Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*,
  603 F. Supp. 3d 799 (D. Ariz. 2022) .......................................................................... 9

*Hannibal-Fisher v. Grand Canyon Univ.*,
  523 F. Supp. 3d 1087 (D. Ariz. 2021) ...................................................................... 15

*Heiss Products, Inc. v. Watlow Elec. Mfg. Co.*,
  2026 WL 617328 (E.D. Mo. Mar. 5, 2026) ................................................................. 7

*In re Arizona Theranos, Inc., Litig.*,
  256 F. Supp. 3d 1009 (D. Ariz. 2017) ...................................................................... 14

*Isofoton, S.A. v. Giremberk*,
  2006 WL 1516026 (D. Ariz. May 30, 2006) ............................................................. 15

*Johnson v. KB Home*,
  720 F. Supp. 2d 1109 (D. Ariz. 2010) ........................................................................ 8

*Lopez v. Musinorte Entm't Corp.*,
  434 F. App'x 696 (9th Cir. 2011) .............................................................................. 14

*Merritt v. Arizona*,
  425 F. Supp. 3d 1201 (D. Ariz. 2019) ...................................................................... 14

*Nucor Corp. v. Employers Ins. Co. of Wausau,*
   2012 WL 12827404 (D. Ariz. Oct. 1, 2012) ................................................................ 15
*Obregon v. Lamb,*
   2025 WL 963894 (D. Ariz. Mar. 31, 2025) ................................................................ 8
*Raygarr LLC v. Employers Mut. Cas. Co.,*
   2018 WL 4207998 (D. Ariz. Sept. 4, 2018) ................................................................ 13
*Seitz v. Rheem Mfg. Co.,*
   544 F. Supp. 2d 901 (D. Ariz. 2008) ................................................................ 8
*Servewell Plumbing, LLC v. Federal Ins. Co.,*
   439 F.3d 786 (8th Cir.2006) ................................................................ 3
*Smith v. Spizzirri,*
   601 U.S. 472 (2024) ................................................................ 6
*Terra Int'l v. Mississippi Chemical Corp.,*
   119 F.3d 688 (8th Cir. 1997) ................................................................ 4
*U.S. ex rel. Costner v. United States,*
   317 F.3d 883 (8th Cir. 2003) ................................................................ 10
*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.,*
   441 F.3d 552 (8th Cir. 2006) ................................................................ 10, 12

Rules

FRCP 12(b)(6) ................................................................ 8

Plaintiff Health Net of Arizona, Inc. ("Health Net") respectfully submits this Memorandum in opposition to Defendant US Health Systems, LLC's ("USHS") Motion to Dismiss Plaintiff's Complaint or, Alternatively, to Stay Proceedings.[1]

## INTRODUCTION

USHS entered this relationship with two primary promises relevant to this dispute. It honored neither. The first was financial. Under the Master Services Agreement ("MSA"), governing the parties' payment obligations for the at-issue year of 2022, Health Net paid USHS upfront capitation payments to manage care for its Medicare members. That arrangement came with a straightforward condition: if USHS's costs exceeded its agreed performance targets, it owed the difference back to Health Net. The structure gave USHS a direct financial incentive to lower costs and improve care, and it gave Health Net protection against the downside if USHS fell short. USHS fell short. Its actual Health Benefit Ratio came in at 91.1% against a contractual target of 88%, generating a Deficit of $4,970,068.[2] The MSA required USHS to pay it. USHS has not. Compl. ¶ 1.

The second promise involved security. From the outset of the relationship, USHS agreed to maintain a letter of credit ("LOC") as security against its default. UHSC did not do so and, instead, perpetuated a years-long fiction, representing compliance while producing a forged LOC confirmation and ultimately procuring a LOC from an entity that never had any ability to pay and that dissolved itself within days of Health Net trying to draw on the security. *Id.* ¶ 2.

USHS now asks this Court to dismiss every claim. It argues the tort and equitable claims lack a jurisdictional basis, despite a choice of law provision this and other Courts have repeatedly

---

[1] References herein to "Motion" or "Mot." are to USHS's Memorandum in Support of Its Motion to Dismiss or, Alternatively, to Stay. Dkt. No. 23.
[2] Capitalized terms are given the same meaning as provided in the Complaint.

held covers the claims alleged here. It argues the claims should be stayed even though there is no arbitration provision. And it argues each remaining claim fails on the merits, a position that is unsupported in light of the allegations in the Complaint. The motion should be denied.

## STANDARD OF REVIEW

In a motion to dismiss a court must accept "as true all factual allegations in the light most favorable to the nonmoving party." *Glick v. W. Power Sports, Inc.,* 944 F.3d 714, 717 (8th Cir. 2019). But to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

**I.     USHS Consented to this Court's Jurisdiction as to Each Count.**

A.     The Forum Selection Clause Encompasses Health Net's Claims in Tort and Equity.

USHS asserts that Counts III through X, which allege LOC-related misrepresentations,[3] are not encompassed within the MSA's forum selection provision. That is incorrect. Section 14 of the MSA states:

> [T]he Parties consent that ***any action arising out of this Agreement*** may be brought in the Circuit Court for the County of St. Louis, Missouri, or the [United] States District Court for the Eastern District of Missouri, Eastern Division, and that either such court ***shall have personal jurisdiction over the Parties with respect to any such action***.

---

[3] Initially, USHS's Motion addresses the LOC-related theories for Counts III to X. However, Counts VIII through X are separately premised on the express and/or implied agreements of the parties relating to Capitation and Deficit obligations under the MSA. Because USHS does not address these theories, USHS's Motion must be denied as to these Counts on this independent basis.

MSA § 14 (emphasis added). This language unequivocally provides the Court with jurisdiction over the parties to decide "**any action** arising out of this Agreement." *Id.* (emphasis added). Forum selection clauses such as this one are prima facie valid and enforced unless they are unjust or unreasonable or invalid. *See Servewell Plumbing, LLC v. Federal Ins. Co.,* 439 F.3d 786, 789 (8th Cir.2006). The party challenging a clause bears an especially "heavy burden of proof" to avoid its bargain. *Id*. (quotation omitted). Due process is satisfied when a party consents to personal jurisdiction by entering a contract that contains a valid forum selection clause. *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001).

Courts interpreting the same or similar language to Section 14 of the MSA routinely hold that claims in tort and equity are encompassed by this language. For example, in *CIC Group, Inc. v. Mitchell*, 2010 WL 5184990, at *2–3 (E.D. Mo. Dec. 15, 2010), a party argued that because a cause of action arose in tort, the forum selection clause was inapplicable. The Court disagreed. It found that the clause's requirement that a dispute "arising out of, this Agreement" did not limit its application to contract claims: tort claims that originate from the contractual relationship fall squarely within its scope. *Id*. Likewise, courts have ruled that similar "arising out of" language extends to equitable claims. *See Fogle Enterprises Inc. v. CiCi Enterprises, L.P.*, 2022 WL 5246446, at *3 (W.D. Mo. Oct. 6, 2022) (finding that a forum selection clause with "arising out of language" applicable to claims for declaratory judgment in addition to preliminary and permanent injunctive relief).

USHS argues that because the MSA does not contain any LOC obligation, any LOC-related claim is therefore outside the scope of the forum-selection clause. However, the jurisdictional question is simply whether the claims "arise out of" the MSA's contractual relationship. Here, they plainly do. USHS purportedly maintained the LOC for the express purpose of securing its Deficit

3

obligations under the MSA.[4] The forum-selection clause inquiry does not require that the precise disputed obligation appear in the contract; it requires only that the dispute originate from the contractual relationship. *CIC Group*, 2010 WL 5184990, at \*2–3. It does here.

B.       USHS's Own Authority Undercuts Its Personal Jurisdiction Argument.

USHS invokes *Terra Int'l v. Mississippi Chemical Corp.*, 119 F.3d 688 (8th Cir. 1997), for the proposition that "whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." Mot. at 7. USHS quotes *Terra* but ignores its holding and analysis. In holding that forum selection language materially similar to that at issue here ***encompasses claims in tort***, *Terra* established guiding principles in determining whether a forum-selection clause applies to a tort claim including where: (1) the tort claim ultimately depends on the existence of a contractual relationship between the parties; (2) resolution of the tort claim relates to interpretation of the contract; **_or_** (3) the tort claim involves the same operative facts as a parallel claim for breach of contract. *Terra*, 119 F.3d at 693–94.

Here, every one of Health Net's tort and equitable claims satisfies at least one – and many satisfy multiple – of these guiding principles.

- ***Terra*  principle  1  (depends  on  contractual  relationship):**  The  LOC misrepresentation claims presuppose the existence of the MSA. Health Net required LOC security specifically because of USHS's downside risk under the Deficit mechanics of the MSA. Compl. ¶¶ 40-41. Without the MSA's capitation/Deficit structure, there is no LOC obligation to misrepresent. The Complaint alleges that the existence of the purported LOC induced Health Net to enter the MSA. *Id.* ¶ 44.

- ***Terra*  principle  2  (requires  contract  interpretation):**  Resolving  the  LOC misrepresentation claims will require interpreting what the MSA required, what

---

[4] For example, the Complaint alleges that given USHS's financial exposure under the MSA, including in relation to any Deficit amount, Health Net required USHS to maintain a LOC for the MSA relationship to continue. Compl. ¶¶ 40-41. Health Net executed the MSA in reliance on USHS's representation that it had procured a LOC. *Id.* ¶ 44. Thus, when USHS defaulted on its Deficit obligation under the MSA, Health Net sought to draw on the LOC to recover the 2022 Deficit. *Id.* ¶ 51 & Ex. 4.

triggered USHS's Deficit obligation, whether Health Net could have terminated for material breach if it had known the LOC was invalid, and the Deficit amount itself – all questions under the MSA.

- ***Terra* principle 3 (same operative facts as contract claim):** The LOC misrepresentation claims involve the same operative facts as Count I (breach of contract). The Deficit is the very obligation the LOC was meant to secure. *Id.* ¶40.

These claims firmly arise out of the MSA.

C.      USHS Ignores the Alleged Fraudulent Conduct During the Term of the MSA.

USHS cites *11500, LLC, v. Cummings*, 2008 WL 4681371, at *3 (W.D. Mo. Oct. 22, 2008), for the proposition that forum selection clauses do not apply to fraud *before* contract execution. Mot., 7.[5] This is incorrect and irrelevant.

*First*, the Complaint alleges that USHS's March 29, 2019 representation that it had procured a valid LOC induced execution of the MSA on January 1, 2020. While this inducement is pre-MSA in time, the Complaint alleges that it caused the MSA to come into existence. Compl. ¶¶ 43-44. Thus, the claims arise out of the MSA.

*Second*, USHS's argument (and Motion generally) addresses only the pre-MSA dimension of the fraud claims and ***ignores entirely*** the independent allegations that USHS induced Health Net ***to <u>continue</u> performing*** under the MSA. The Complaint expressly alleges that USHS made misrepresentations "with the intent to induce Health Net to rely on those misrepresentations and omissions by ***continuing to perform*** under the MSA, to ***remain in that contractual relationship***, and ***to not find USHS in material breach*** of the parties' agreement." Compl. ¶¶ 81, 212 (emphasis added). This theory is grounded in conduct that occurred during the MSA's term, not merely "conduct that occurred before the MSA was executed," as USHS suggests. Mot. at 7.

---

[5] Initially, USHS misreads *Cummings*. In that case, the plaintiff – the alleged victim of the fraud – was seeking to escape the forum selection clause, arguing that the fraudulent scheme infected the contract and should not bind it to the agreed forum. *Cummings*, 2008 WL 4681371 at 2. Here the exact opposite is occurring.

5

Fundamentally the parties agreed to a forum selection provision which allowed all claims arising from their relationship to be brought in this Court. USHS's Motion shows no reason, under the venue provision or applicable law, why the parties should not be held to that provision's terms.

## II.    Counts III Through X Should Not Be Stayed Pending the Resolution of a Separate Dispute Subject to Arbitration.

USHS's stay request fails at the threshold. *First*, the FAA's § 3 stay remedy is unavailable because no written arbitration agreement covers Health Net's claims against USHS in this Court. USHS's reliance on *Smith v. Spizzirri* is misplaced, as it addresses the mandatory nature of a § 3 stay once a court determines that a valid arbitration agreement covers the claims at issue. *See Smith v. Spizzirri*, 601 U.S. 472, 476-78 (2024). Again, no arbitration agreement covers these claims.

*Second*, as USHS acknowledges, the pending arbitration is (a) against Arkos, not USHS; (b) under the Network Services Agreement ("NSA"), not the MSA; and (c) principally addresses calendar year 2023, not 2022. Mot. Attachment C, pp. 1, 4–5. USHS is not a signatory to the NSA, not a party to that arbitration, and not a party to the NSA's arbitration clause.

*Third*, USHS's "nearly identical claims" rhetoric is also contradicted by the arbitration demand itself. In that demand, Health Net expressly carved out obligations arising in 2022 under the MSA as claims belonging in a different forum and separate and distinct from the NSA claims subject to arbitration.

*Fourth*, USHS's Motion is silent on whether it seeks a discretionary stay, and therefore such relief should be denied. This is further confirmed because: (1) the cases involve different parties; (2) the cases arise under different contracts covering different time periods; (3) the arbitration does not resolve the issues in this case;[6] and (4) an indefinite stay would substantially

---

[6] For example, any finding that Arkos did or did not engage in fraud relevant to the 2023 contract year is not conclusive of whether USHS did or did not engage in fraud relevant to the 2022 contract year. Likewise, because the claims involve different parties, contracts, and time periods, the risk of inconsistent decisions is minimized.

prejudice Health Net by delaying its recovery of the $4,970,068 Deficit and other relief while doing nothing to simplify the issues before this Court. Whatever efficiency considerations USHS invokes, they do not justify halting a properly filed federal lawsuit involving non-arbitrable claims under a different contract applying to a different time period against a party that is not a participant in any arbitration.

**III.    Health Net Has Sufficiently Pled Its Claims.**

    A.    <u>Count I: Breach of Contract Claim.</u>

USHS asserts: (1) Health Net failed to satisfy the MSA's timing requirements, specifically the undefined term "final run-out"; and (2) the MSA contains no LOC requirement, so no LOC-related breach can be stated. Both arguments ask the Court to prematurely resolve disputed issues.

    1.    MSA's timing requirements.

The Complaint alleges facts establishing that Health Net complied with all requirements and obligations contained in the MSA, including those relating to timing of the notice, and the May 6, 2025 notice was issued after extensive participation of USHS in the process of arriving at the Deficit amount. In particular, Health Net's issuance of the Deficit notice did not occur until May 6, 2025 in part due to delays associated with the COVID-19 pandemic and ongoing discussions between Health Net and USHS regarding the Deficit calculation. Compl. ¶ 37 n. 5. USHS's active participation in that reconciliation was one of the reasons for delay. *Id.* ¶ 37. It cannot now argue the result came too late. Whether Health Net satisfied the MSA's timing requirements turns on the meaning of undefined terms including "final run-out" in Section 3.2 of Exhibit B – a question of contract interpretation that cannot be resolved against Health Net at the pleading stage. *See Heiss Products, Inc. v. Watlow Elec. Mfg. Co.,* 2026 WL 617328, at *1 (E.D. Mo. Mar. 5, 2026) (holding a court is barred from addressing parties' contract interpretation

arguments definitively on a motion to dismiss).[7] The provision relied on by USHS does not even reference "Deficit notice," let alone preclude Health Net from issuing a Deficit notice when it did, as USHS suggests.

>    2.    USHS's LOC Obligation.

USHS asserts that the MSA contains no LOC obligation. However, the Complaint expressly pleads the LOC obligation as a freestanding contract predating the MSA. Indeed, Health Net alleges that "[t]he MSA, **and** USHS's promises and obligations relating to the LOC, are valid, binding, and enforceable contracts." Compl. ¶ 72 (emphasis added). In particular, on December 10, 2018, Health Net notified USHS that Health Net would require USHS to secure a LOC for the relationship between the two parties to proceed – before the MSA was ever executed. *Id.* ¶ 40. On January 1, 2020, in reliance on USHS's representation that it had procured a LOC in compliance with its agreement to do so, the parties executed the MSA. *Id.* ¶ 45. Whether that freestanding obligation is enforceable is a merits question; it cannot be resolved against Health Net on a Rule 12(b)(6) motion particularly in the face of Health Net's other breach of contract allegations.

Furthermore, contrary to USHS's suggestion otherwise, Section 13 of the MSA does not preclude USHS's freestanding LOC obligation, as USHS suggests. That provision states: "This document expresses the entire agreement between the Parties ***concerning the <u>subject matter hereof</u>*** and supersedes all previous oral or written agreements or understandings between the Parties concerning the subject matter hereof." Mot. at 15 (emphasis added). That clause is

---

[7] *See also ABC Water LLC v. APlus Water LLC*, 2019 WL 3858193, at *2 (D. Ariz. Aug. 16, 2019) ("The Court finds that dismissal on the basis of contract interpretation is not properly addressed through a FRCP 12(b)(6) motion"); *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1118 (D. Ariz. 2010) (stating that the Court would decline to interpret a contract in isolation on a motion to dismiss); *Seitz v. Rheem Mfg. Co.*, 544 F. Supp. 2d 901, 910 (D. Ariz. 2008) (stating "it would be premature at the motion to dismiss stage for the Court to delve into contractual interpretation"); *see also Obregon v. Lamb*, 2025 WL 963894, at *3 (D. Ariz. Mar. 31, 2025) ("a motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (quotation omitted).

expressly limited to agreements concerning same "subject matter" of the MSA. USHS itself repeatedly argues throughout its Motion that the LOC obligation falls outside the MSA's four corners. Mot. at 2, 4-7, 11, 14-15. It cannot simultaneously invoke the MSA's integration clause to extinguish an obligation the subject matter of which it insists is not addressed in the MSA.

B.      Count II: Implied Covenant Claim.

USHS asserts that the implied covenant of good faith and fair dealing cannot be used to create obligations not found in the MSA. However, the implied covenant claim does not seek to impose any LOC obligation on USHS where none exists; rather, it addresses USHS's conduct in accepting continued capitation payments while concealing from Health Net facts (the LOC's invalidity, Craven House's insolvency, etc.) that would have entitled Health Net to terminate the MSA or withhold further payments. Compl. ¶ 76. That is textbook bad faith within an existing contractual relationship. *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 821 (D. Ariz. 2022) (noting the implied covenant is breached when the defendant denied "the other party the reasonably expected benefits of the agreement.") (quotation omitted).

C.      Counts III-IV: Fraudulent Inducement and Fraudulent Concealment Claims.[8]

Health Net's theory is straightforward. Beginning in December 2018 and continuing for over six years through June 2025, USHS repeatedly confirmed to Health Net the existence of a valid, irrevocable LOC from a Florida LLC called Craven House Capital North America, LLC ("Craven House"). Compl. ¶¶ 42-50. Craven House apparently never had the ability to satisfy any

---

[8] Health Net, similar to, USHS applies Arizona law to the substance of its claims. Mot. at 6 n.2. Health Net does so pursuant to the forum section provision (MSA § 14), in addition to eighth circuit case law which requires a court sitting in diversity to apply the substantive law of the forum state (*see Aragon v. Wal-Mart Stores E., LP*, 735 F.3d 807, 809 (8th Cir. 2013)). Health Net further agrees with USHS Given the Arizona-centric allegations in the Complaint, Arizona law is applicable under a choice of law analysis. Mot. at 6 n.2.

9

draw. *Id.* ¶¶ 53-59, 88, 105. USHS knew this — or was willfully blind to it — and took active steps to perpetuate the deception, including by transmitting a June 2025 LOC confirmation that was not signed by anyone at Craven House, but by Steven Kotter, ***an employee of USHS's own managing member, Arkos***. *Id.* ¶ 48 & Ex. 3. When Health Net attempted to draw on the credit, Craven House went silent and dissolved just days later. *Id.* ¶¶ 51-59.

"To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). The claim must identify "who, what, where, when, and how." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). The Complaint satisfies each element with the requisite level of particularity.

**Who:** The Complaint alleges that USHS submitted to Health Net, or caused to be submitted, the at-issue representations. Compl. ¶¶ 42-48. USHS asserts that the allegations are deficient because they fail to name any specific individuals. Mot. at 9. That is incorrect. The Complaint identifies specific individuals by name. For example, on or around June 17, 2025, the CEO of USHS's managing member, Eric Tanner, transmitted to Health Net a written confirmation of the LOC, stating that the LOC "was more than a financial mechanism – it's a demonstration of good faith and an investment in building long-term success together." Compl. ¶ 48. The accompanying LOC confirmation letter, on Craven House letterhead, was signed by Steven Kotter purportedly "for and on behalf of" Craven House – but Mr. Kotter was, and continues to be, an employee of USHS's managing member, Arkos, not Craven House. *Id.* That a USHS-affiliated employee signed on behalf of the purported issuer is among the most telling facts in this case – it

10

goes directly to USHS's knowledge of and involvement in the fraud. The Complaint identifies other specific communications from USHS by date, subject matter, and document title. *See*, *e.g.*, *id.* ¶¶ 43, 45, 47.

**What:** By and through each of these communications, USHS represented that it had procured a valid, legitimate LOC, and further represented that should it default on any Deficit obligation, Health Net would have the ability to immediately draw upon the LOC per its terms.[9] *Id*. ¶ 49. The pre-MSA communications, including on or around March 29, 2019, induced Health Net to execute the MSA in 2020. *Id*. ¶ 44. The communications occurring in 2020 and thereafter constituted a continuing fraud/concealment. *Id*. ¶¶ 96-112. USHS never once communicated to Health Net that the LOC was illegitimate or not authentic, that Craven House was not a financial institution, was defunct or insolvent, or that USHS, Arkos, or Craven House were otherwise at risk of defaulting on their obligations. *Id.* ¶ 49.

**When:** The Complaint pleads the dates of at least four misrepresentations including on or around March 29, 2019; September 1, 2021; March 24, 2023 and June 17, 2025. *Id*. ¶¶ 43–48. The fraud began as far back as December 10, 2018, when Health Net first conditioned the relationship on USHS's procurement of a LOC, and continued through at least June 2025 – a period of over six years. *Id*. ¶¶ 40, 57. USHS's assertion that Health Net has not identified any specific

---

[9] USHS asserts that the Complaint's inconsistent reference to singular letter of credit and plural letters of credit renders it "indecipherable." That is incorrect. The Complaint in fact identifies four distinct communications by date and amount: the March 29, 2019 LOC ($1,627,920); the September 2021 expansion ($10M); the March 2023 confirmation ($32M); and the June 2025 confirmation ($40M). Each involved a representation of validity and irrevocability and evidence a continuing scheme with discrete identifiable components. In any case, Health Net need not prove its fraud claim at this stage, only plead it with particularity. It has done so. The Complaint pleads each element required under Arizona law, including that USHS made representations (¶¶ 42-48), which were false (¶¶ 86, 103, 117), that were material (*id.*), which USHS knew were false (*id.)*, which USHS intended Health Net to act upon (*id.* ¶¶ 81, 98, 118), all while Health Net was ignorant of the truth (*id.* ¶¶ 93, 110, 119), had a right to rely on the statements (*id.* ¶¶ 91,108, 120), and was subsequently harmed (*id.* ¶¶ 95, 112, 124). *See Corewest Res. LLC-FZ v. Gideon Grp. Inc.*, 2025 WL 3637447, at *3 (D. Ariz. Dec. 16, 2025) (citing *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010)).

representation from USHS in response "that could have theoretically induced Health Net to act" (Mot. at 10) is incorrect. The March 2019 representation came prior to the execution of the 2020 MSA, and the September 2021 representation was made during performance thereunder.

**Where:** Each communication was transmitted directly to Health Net as the named beneficiary of the LOC. *Id.* ¶¶ 44-50.

**How:** USHS employed multiple methods to perpetuate Health Net's belief that a valid LOC was in effect. *First*, USHS sent a LOC purportedly from Craven House in the amount of $1,627,920 in March 2019. *Id.* ¶ 43. USHS sent expanded LOCs purportedly in the amount of $10 million in September 2021, $32 million in March 2023, and $40 million in June 2025. *Id.* ¶¶ 47-8. Each communication represented the LOC was valid and in force. *Id. Second*, USHS caused Kotter, its own managing member's employee, to sign the June 2025 confirmation purportedly "for and on behalf of" Craven House. *Id.* ¶ 54. *Third*, despite its CEO having just represented the LOC was valid and a "demonstration of good faith," USHS sent a letter to Craven House on November 14, 2025, attempting to stop the distribution of funds and unilaterally declaring Health Net's Presentation for Drawing invalid. *Id.* ¶ 53. *Fourth*, when Health Net raised its serious concerns about the LOC's legitimacy, USHS responded by dismissing those concerns as "unfounded," and – rather than investigate – sent Health Net a purported Craven House audit supposedly demonstrating compliance. *Id.* ¶ 56. *Fifth*, and even to this day, USHS never notified Health Net that Craven House was insolvent, incapable of honoring the LOC, or illegitimate, or had voluntarily dissolved itself. Health Net learned of this through its own independent research. *Id.* ¶ 59.

Health Net need not prove its fraud claim at this stage, only plead it with particularity. It has done so far beyond what Rule 9(b) requires. *See St. Luke's Hosp., Inc.*, 441 F.3d at 556 (holding

that under Rule 9(b) complaint must identify the who, what, when, where and how of the alleged fraud).

D.      Count V: Negligent Misrepresentation Claim

"A claim for negligent misrepresentation requires a misrepresentation or omission of a fact." *Arnold & Associates, Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003) (quotation omitted). While a promise of future conduct alone cannot support such a claim, the claim survives where the plaintiff also alleges a misrepresentation of an existing fact. *Raygarr LLC v. Employers Mut. Cas. Co.*, 2018 WL 4207998, at *4 (D. Ariz. Sept. 4, 2018) (denying motion to dismiss where claim was based on future conduct and a misrepresentation of existing insurance coverage). For the same reasons provided in Section III.C, the Complaint has sufficiently pled a negligent misrepresentation claim. To the extent USHS attempts to characterize the misrepresentations as mere "future promises to perform" (Mot. at 11-12), that is incorrect. USHS represented that a valid LOC then existed, was currently in force, and was irrevocable for a period of time into the future. These are not promises about future action. They are representations about then-existing states of affairs.[10] USHS failed to exercise reasonable care and competence in communicating LOC information to Health Net. *See Raygarr*, 2018 WL 4207998, at *4 (denying a motion to dismiss "[b]ecause the allegations … involve not only a promise of future conduct but a misrepresentation regarding the existing coverage…").

E.      Counts VI and VII: Aiding and Abetting and Civil Conspiracy Claims.

USHS asserts that Health Net has failed to allege any valid underlying tort supporting these claims and that the underlying claims lack particularity. USHS is wrong again. The Complaint

---

[10] While the Complaint pleads negligent misrepresentation with sufficient particularity under Rule 9(b), federal courts sitting in Missouri have consistently held that negligent misrepresentation claims need only comply with Rule 8(a)'s general pleading requirements, not Rule 9(b)'s heightened standard. *See Cold Front Logistics, LLC v. Auto-Owners (Mut.) Ins. Co.*, 2025 WL 1908980, at *3 (W.D. Mo. July 10, 2025).

13

alleges that Craven House and/or Arkos engaged in the commission of torts upon Health Net when they purported to procure and issue a valid LOC and subsequent confirmations in furtherance of USHS's relationship with Health Net. Compl. ¶ 126. By doing so, they represented to Health Net that the LOC was valid. In reality, Craven House was neither willing nor able to satisfy draws on the LOC, but Craven House and/or Arkos, by issuing the LOC and communicating it to Health Net, falsely made representations to the contrary.

Furthermore, the Complaint asserts facts pleading an aiding and abetting claim with sufficient particularity including: an underlying tort (*Id.* ¶ 79-124); that USHS knew that the conduct was occurring and constituted a breach (*id.* ¶¶ 48, 53-58, 128); that USHS provided substantial assistance in furtherance of the tort (*id.* ¶¶ 48, 53-58, 130); and Health Net suffered damages (*id.* ¶ 133). *See Merritt v. Arizona*, 425 F. Supp. 3d 1201, 1233 (D. Ariz. 2019) (stating aiding and abetting elements). Likewise, as to civil conspiracy, the Complaint pleads with sufficient particularity: an agreement between USHS, Arkos, and Craven House (*id.* ¶¶ 48, 53-58, 135); to accomplish an unlawful purpose (*id.* ¶ 136); overt acts in furtherance of the conspiracy (*id.* ¶ 48, 53-58, 137); and damages (*id.* ¶ 139). *See In re Arizona Theranos, Inc., Litig.,* 256 F. Supp. 3d 1009, 1037 (D. Ariz. 2017) (stating required elements).

F.    Counts VIII and IX: Unjust Enrichment and Money Had and Received Claims.

Under Arizona law, a plaintiff may pursue unjust enrichment as an alternative theory of recovery in conjunction with a breach of contract claim, subject to only one recovery. *Lopez v. Musinorte Entm't Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011). Alternative pleading serves a well-established function: until the Court resolves whether an enforceable contractual duty covers the full scope of USHS's wrongful conduct – a question that appears to be disputed by USHS – Health Net is entitled to plead quasi-contractual recovery in the alternative. Similarly, because money had and received is recognized under Arizona law as akin to an unjust enrichment action,

14

courts applying Arizona law regularly allow money had and received claims to proceed alongside breach of contract claims. *See Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1099 (D. Ariz. 2021) (allowing money had and received claim to proceed even where its allegations substantially overlapped with the breach of contract claim). The claims survive on this basis alone.

Even setting aside alternative pleading, Arizona recognizes that an unjust enrichment can survive if its allegations go beyond a mere breach of contractual duties. *Isofoton, S.A. v. Giremberk*, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006) (allowing an unjust enrichment claim alongside breach of contract claim at the motion to dismiss stage). Here, the Complaint bases the claims on inequitable conduct including the misrepresentation-induced continuation of capitation payments, not merely because the MSA required them. *See*, *e.g.*, Compl. ¶¶ 144, 149. That is a distinct claim.

G.    Count X: Declaratory Judgment.

The declaratory relief properly sought by Health Net resolves a live, ongoing dispute regarding USHS's LOC obligations moving forward that a backward-looking damages award does not settle. Compl. ¶¶ 151(a)-(b). In any event, because declaratory relief is a remedy, Health Net may pursue declaratory relief to the extent it is supported by the underlying claims. *See Nucor Corp. v. Employers Ins. Co. of Wausau,* 2012 WL 12827404, at *2 (D. Ariz. Oct. 1, 2012) ("when other claims are joined with an action for declaratory relief… the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief.") (quotation omitted).

**CONCLUSION**

Health Net respectfully requests that the Court deny USHS's Motion to Dismiss.

15

By: /s/Aaron Chickos
Sarah Hellmann, No. 50373
Aaron Chickos, No. 62072
Andy Krokstrom, No. 74728
8001 Forsyth Blvd. Suite 1500
St. Louis, MO 63105
Phone: 314.480.1500
Facsimile:314.480.1505
sarah.hellmann@huschblackwell.com
aaron.chickos@huschblackwell.com
andy.krokstrom@huschblackwell.com

*Attorneys for Plaintiff Health Net of Arizona, Inc.*
*d/b/a Arizona Complete Health*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Aaron Chickos, hereby certify that on the 4th day of May 2026, a copy of the foregoing document was filed via the court's electronic filing system and served upon all counsel of record.

/s/ Aaron Chickos
Aaron Chickos

*Counsel for Plaintiff*