UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HEALTH NET OF ARIZONA, INC. D/B/A ARIZONA COMPLETE HEALTH, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:26-cv-00417-CMS |
| US HEALTH SYSTEMS, LLC, D/B/A USHS, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff Health Net of Arizona, Inc. d/b/a Arizona Complete Health's Petition (Doc. 24) and Defendant US Health Systems, LLC, d/b/a USHS's Motion to Dismiss, or, Alternatively, to Stay (Doc. 22). For the reasons stated below, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

## BACKGROUND

### I. Factual Background

The following allegations from Plaintiff's Petition (Doc. 24) are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

Plaintiff is a managed care organization offering Medicare, Medicaid, Affordable Care Act and other health plans in the State of Arizona. (Doc. 24 ¶ 1). Defendant is "an organization that maintains a network of health care providers . . . that are interested in improving and reducing costs." *Id.*

Plaintiff and Defendant desired to enter a Master Services Agreement (MSA). *Id.* ¶¶ 1–2. Plaintiff alleges that, on December 10, 2018, Plaintiff notified Defendant that Plaintiff would require Defendant to secure a letter of credit that Plaintiff could draw on in the event Defendant

defaulted for the relationship between the two parties to proceed. *Id.* ¶¶ 40–41. Defendant agreed to obtain and maintain a letter of credit in compliance with its agreement for the duration of the relationship and until it had complied with its obligation. *Id.* ¶ 42. Defendant, by sending letter of credit confirmation letters, represented to Plaintiff that it received an "Irrevocable Letter of Credit" dated March 29, 2019, from "Craven House Capital North America LLC [that designated] the 'Beneficiary' as 'Health Net.'" *Id.* ¶ 43. Thereafter, the parties executed the MSA, effective January 1, 2020. *Id.* ¶ 1.

Among other things, the MSA "incentivized [Defendant] to provide cost saving care through several mechanisms, including through Bonus and Deficit adjustments." *Id.* ¶ 23. "[I]f [Defendant] failed to meet its performance targets, [it] would owe to [Plaintiff] a portion of the capitation payments[1] it already received from [Plaintiff] in the form of a 'Deficit' amount [(the 'Deficit Amount')]." *Id.*

The MSA contained a governing law clause, whereby the parties agreed that the laws of the State of Arizona govern the MSA and that "any action arising out of [the MSA] may be brought in the Circuit Court for the County of St. Louis, Missouri, or the Company [sic] States District Court for the Eastern District of Missouri, Eastern Division . . . ." (Doc. 24 at 53). The MSA also contained a merger clause stating that the MSA "expresses the entire agreement between the Parties concerning the subject matter hereof and supersedes all previous oral or written agreements or understandings between the Parties concerning the subject matter hereof." *Id.* The contract stated, "[A final] settlement . . . will be completed 60 days after the six (6) month final run-out." *Id.* at 72.

---

[1] Capitation payments are a form of compensation in health care whereby a provider/organization receives a set payment upfront that is estimated to cover "all or some of the health care services for a specific patient over a certain period of time." (Doc. 24 ¶ 1 n.1).

For the next several years, Defendant allegedly sent Plaintiff numerous revised irrevocable letters of credit from Craven House in favor of Plaintiff in varying amounts. *Id.* ¶¶ 42–48. On June 17, 2025, Defendant sent another written confirmation that included a statement by Defendant's CEO stating the letter of credit "was ***more than a financial mechanism – it's a demonstration of good faith*** . . . ." *Id.* ¶ 48 (emphasis in original). Beginning in 2023, Plaintiff's communications with Defendant regarding the 2020 MSA were often made by and through Defendant's managing member and parent company, Arkos. *Id.* ¶ 47 n.7.

In 2022, Defendant allegedly owed a Deficit Amount of $4,970,068 to Plaintiff. *Id.* ¶¶ 30–35. On May 6, 2025, after alleged delays due to COVID-19 and "ongoing discussions" between the parties, Plaintiff issued a "Deficit Notice" to Defendant instructing it to pay the 2022 Contract Year amount due within sixty days. *Id.* ¶ 37 n.5.

Defendant failed to pay within sixty days of receiving notice. *Id.* ¶ 38. Thus, on October 30, 2025, Plaintiff "[p]resented Craven House with a Presentation for Drawing seeking to draw upon the letter of credit" for the amount owed from Contract Year 2022. *Id.* ¶ 51. But "Craven House did not honor [Plaintiff]'s Presentation for Drawing or respond to it at all." *Id.* ¶ 54.

Thereafter, Plaintiff investigated and discovered that Steven Kotter, managing member of Arkos, signed the letter of credit "for and on behalf of" Craven House, that Craven House's website was inactive, Craven House had experienced "a severe liquidity crisis in 2023 and 2024," and, on December 2, 2025, Craven House "voluntarily filed Articles of Dissolution with the Florida Department of State." *Id.* ¶¶ 54, 57. Defendant has yet to pay the Deficit Amount to Plaintiff. *Id.* ¶ 38.

## II. Procedural Background

On February 19, 2026, Plaintiff filed its Petition against Defendant in the Circuit Court of St. Louis County alleging ten counts: breach of contract (Count I), breach of implied duty of good faith and fair dealing (Count II), fraudulent inducement (Count III), fraudulent concealment (Count IV), negligent misrepresentation (Count V), aiding and abetting a tort (Count VI), civil conspiracy (Count VII), unjust enrichment (Count VIII), money had and received (Count IX), and declaratory relief (Count X). (Doc. 24).

On March 23, 2026, Defendant filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1).

On April 14, 2026, Defendant filed its Motion to Dismiss or, Alternatively, to Stay Proceedings, arguing: 1) Counts III through X should be dismissed because Plaintiffs did not allege minimum contacts required for specific personal jurisdiction, 2) in the alternative, Counts III through X should be stayed because Plaintiff is already pursuing them in arbitration, 3) Counts III through X fail to state claims for relief, and 4) Plaintiff's breach of contract and breach of implied duty of good faith and fair dealing claims (Counts I and II) are "untimely and improper." (Docs. 22 and 23).

On May 4, 2026, Plaintiff filed its Memorandum in Opposition to Defendant's Motion. (Doc. 31). And, on May 21, 2026, Defendant filed its Reply to Plaintiff's Memorandum in Opposition. (Doc. 34).

## LEGAL STANDARDS

## I. Motion to Dismiss

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must

include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice of . . . the claim . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted); Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is "entitled to present evidence in support of his claim." *Id.*

When analyzing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken*, 140 F.4th at 450. That said, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The Court's analysis is context specific and "requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

### I. Count I

In Count I, Plaintiff claims Defendant breached the MSA by 1) failing to pay the Deficit Amount upon issuance of the Deficit Notice and 2) failing to provide a legitimate letter of credit. (Doc. 24 at 20–23). Plaintiff also alleges breach of contract of a purported letter of credit agreement. *Id.* ¶¶ 67–68. Defendant argues Plaintiff's "breach of contract and breach of implied duty of good faith and fair dealing claims are untimely and improper," and must be dismissed,

because Plaintiff failed to send the Deficit Notice within the time required by the MSA. (Doc. 23 at 13).

To plead a breach of contract claim under Arizona law, a plaintiff must allege "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Hannibal-Fisher v. Grand Canyon University*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021).

Plaintiff alleges the MSA was a contract between Plaintiff and Defendant, which Defendant breached by not paying the Deficit Amount, and that Defendant's breach resulted in damages in the amount of $4,970,068. (Doc. 24). Plaintiff plainly has alleged a breach of the MSA.[2]

That said, Plaintiff cannot bring a breach of contract claim for any alleged breach of an agreement to maintain a letter of credit. As discussed *infra*, this Court lacks personal jurisdiction over any claims arising out of a letter of credit agreement. Accordingly, Count I is dismissed to the extent it alleges breach of an agreement to maintain a letter of credit.

**II. Count II**

In Count II, Plaintiff alleges Defendant breached the implied covenant of good faith and fair dealing because the MSA and "obligations relating to the letter of credit[] are valid, binding, and enforceable contracts," under which Defendant failed to meet its obligations. (Doc. 24 ¶¶ 74, 76). Specifically, Defendant allegedly "concealed the fact that Craven House did not have the

[2] While Defendant argues there was no breach because Plaintiff did not timely notify Defendant of the Deficit Amount and the parties disagree about whether the term "final run-out" is ambiguous, *see* (Docs. 23 at 13–14; 24 ¶ 37 n.5; 31 at 11–12; 34 at 9–11), the Court need not decide this issue because, on its face, the MSA does not contain a clear notification provision regarding the Deficit Amount. *See Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696 (E.D. Mo. 2018) (stating court may consider documents attached to, or materials necessarily embraced by, the pleadings).

ability to satisfy any valid draw" and nonetheless "continued to accept capitation payments" from Plaintiff. *Id.* ¶¶ 76–77.

Under Arizona law, "[a] party breaches the covenant 'by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain.'" *Keg Restaurants Arizona, Inc. v. Jones*, 375 P.3d 1173, 1186 (Ariz. Ct. App. 2016) (internal citations omitted). "Whether a breach occurred is a question of fact for the jury." *Id.*

Here, while no obligation to maintain a letter of credit appears in the MSA, *see infra*, Plaintiff has sufficiently alleged facts from which a jury could conclude a breach of the implied covenant of good faith and fair dealing. Plaintiff alleges the letter of credit was a prerequisite to entering the MSA and Defendant's alleged concealment of its inability to draw on such letter of credit is inconsistent with Plaintiff's reasonable expectations. (Doc. 24 ¶¶ 74–77). Taking the factual allegations as true, as the Court must, Plaintiff has stated a claim for breach of the covenant of good faith and fair dealing under Arizona law.

## III. Counts III Through VII

Plaintiff's allegations in Counts III through VII involve and depend upon the alleged letter of credit contract rather than the MSA. (Doc. 24). Particularly, in Count III, Plaintiff alleges Defendant fraudulently induced Plaintiff to enter the MSA by alleging a "letter of credit existed, was authentic, valid, and would be in effect at all times relevant . . . ." *Id.* ¶ 82. In Count IV, Plaintiff alleges Defendant fraudulently concealed "that its representations and omissions regarding the letter of credit, Craven House, and compliance with its letter of credit obligation were false . . . ." *Id.* ¶ 105. In Count V, Plaintiff alleges Defendant negligently misrepresented the

letter of credit. *Id.* ¶¶ 113–24. In Count VI, Plaintiff alleges Defendant aided and abetted a tort when "Craven House and/or Arkos engaged in the commission of torts . . . when it purported to procure and issue a valid letter or credit . . . ." *Id.* ¶ 126. Finally, in Count VII, Plaintiff alleges that Defendant is liable for civil conspiracy because Defendant, "Arkos, and Craven House agreed to act together for the wrongful purpose of misrepresenting the terms, validity, and authenticity of the letter of credit issued for [Plaintiff]'s benefit." *Id.* ¶ 135.

Plaintiff alleges jurisdiction is proper based solely on the forum selection clause in the MSA, which states, in pertinent part, "any action arising out of this Agreement may be brought in the Circuit Court for the County of St. Louis, Missouri, or the [United] States District Court for the Eastern District of Missouri, Eastern Division . . . ." *Id.* at 53. Plaintiff's Petition acknowledges that Plaintiff's injury occurred outside of Missouri and "neither party is a Missouri resident." *Id.* ¶ 11.

Personal jurisdiction "must be determined on a claim-by-claim basis," and "the conclusion that the court has personal jurisdiction over a defendant as to a particular claim does not necessarily mean that it has personal jurisdiction over that same defendant as to [the plaintiff's] other claims." *Stifel, Nicolaus & Co. v. Sapient Cap., LLC*, No. 4:23-cv-00241-MTS, 2024 WL 1014069, at *4 (E.D. Mo. Mar. 8, 2024). Although a "defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause," *Serv. Team of Pros. v. Folks*, No. 18-0048-cv-w-bp, 2018 WL 2051516, at *2 (W.D. Mo. May 2, 2018), "[w]hether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997) (internal quotations omitted).

As is the case here, "[c]lauses that extend only to disputes 'arising out of' a contract are construed narrowly." *iiiTech, Ltd. v. Weatherford Tech. Holdings, LLC*, No. H-18-1191, 2019 WL 1430428, at *9 (S.D. Tex. Mar. 29, 2019). The narrow venue selection clause in the MSA does not extend to any action that arises outside of the MSA. Notably, there is no mention of a letter of credit in the MSA, which is attached to Plaintiff's Complaint. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505 (8th Cir. 2018) (stating that courts can consider exhibits attached to complaint for motion to dismiss purposes). Thus, the counts dependent on the letter of credit arise entirely outside the MSA and are not within the venue selection clause of the MSA.

Also, Plaintiff's various claims of fraudulent inducement and concealment cannot survive a motion to dismiss for the additional reason that "[f]orum selection clauses have been held to not apply to claims based on schemes to defraud that began before the contract was executed." *11500, LLC v. Cummings*, No. 08-6061-cv-sj-FJG, 2008 WL 4681371, at *3 (W.D. Mo. Oct. 22, 2008) (citing *Root v. GERS, Inc.*, No. 8:01-cv-326, 2002 WL 809539, at *4 (D. Neb. Apr. 3, 2002)).

For these reasons, the Court lacks personal jurisdiction over Counts III, IV, V, VI, and VII of Plaintiff's Petition. *See, e.g.*, *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1036 (D. Ariz. 2017) (dismissing aiding and abetting and conspiracy claims when underlying tort claim failed).

**IV. Counts VIII and IX**

In Count VIII, Plaintiff claims Defendant is unjustly enriched because Plaintiff conferred a benefit upon Defendant by making capitation payments that Defendant was not contractually entitled to retain and "it would be unjust and inequitable to allow [Defendant] to retain the benefit conferred by [Plaintiff] to [Defendant] without just compensation . . . ." (Doc. 24 ¶ 145). In Count IX, Plaintiff brings a similar claim for money had and received. *Id.* ¶¶ 146–49.

To state a claim for unjust enrichment under Arizona law, a Plaintiff must prove: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Hannibal-Fisher*, 523 F. Supp. 3d at 1098. A claim for money had and received is an equitable claim "akin to an action for unjust enrichment." *Id.* at 1099. Such a claim requires a showing that "the defendant has received or obtained possession of money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff." *Id.*

All of that said, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976). Therefore, Count VIII, alleging unjust enrichment, is precluded by the MSA. Likewise, the equitable claim for money had and received, akin to an action for unjust enrichment, also is precluded by the MSA. *See generally Hannibal-Fisher*, 523 F. Supp. 3d at 1099.

**V. Count X**

In Count X, Plaintiff seeks declaratory relief that: 1) Defendant "is obligated to satisfy its letter of credit obligation . . ." and 2) "[t]he parties' relationship as reflected in the MSA has terminated and [Plaintiff] has no further obligation" to Defendant "except those . . . under the MSA that expressly survive termination . . . ." (Doc. 24 ¶¶ 150–51).

As both parties acknowledge, declaratory relief "is not a separate cause of action" but is a remedy to a cause of action. *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 770 (D. Ariz. 2012). Because all of Plaintiff's claims dependent on the letter of credit are dismissed, Count X is

also dismissed as to those claims. Count X remains only as a remedy to the MSA claims in Counts I and II.[3]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, or, Alternatively, to Stay (Doc. 23) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Count I is **DISMISSED** to the extent it alleges breach of the letter of credit contract. Count I remains as to alleged breach of the MSA.

**IT IS FURTHER ORDERED** that Counts III, IV, V, VI, VII, VIII, and IX are **DISMISSED**.

**IT IS FINALLY ORDERED** that Count X is **DISMISSED** to the extent it seeks declaratory judgment regarding the letter of credit contract. Count X remains as to Counts I and II.

So ordered this 7th day of October 2026.



CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE

[3] The Court need not consider Defendant's alternative motion to stay pending arbitration as to Counts III through X because Counts III through IX are dismissed and Count X remains only as a remedy to the MSA claims in Counts I and II.